806 So.2d 647 (2002)
STATE of Louisiana
v.
Lyle J. JOHNSON.
No. 2001-KK-2436.
Supreme Court of Louisiana.
January 25, 2002.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Paige J. Cline, Valentin M. Solino, New Orleans, Counsel for Applicant.
Anderson Council, Kenner, Counsel for Respondent.
PER CURIAM.
In this prosecution for possession of heroin in violation of La.R.S. 40:966, the trial court granted respondent's motion to suppress the evidence, not on the basis of its own perception of the merits, which it thought were clearly against respondent, but on the basis of its impression that jurisprudentially, "it is a stop when the officers, like in this case, pull up four feet from the defendant who is just standing there, jump out of the car with the intention of grabbing this guy and putting him on the car." The court of appeal denied the state application for review finding no error "based upon [the court's] assessment of the credibility of witnesses." State v. Johnson, 01-1338 (La.App. 4th Cir.8/3/01), ___ So.2d ___ (Tobias, J., dissenting). We granted the state's application to reverse the rulings below because the uncontested testimony presented at the motion to suppress reveals that the trial court's first instincts were correct and that no actual or "imminent" stop occurred before respondent threw down his heroin packet at the mere sight of the police.
Acting on a tip from an anonymous informant that a light-skinned African-American male wearing a blue bandana, bluejeans and a black jacket was selling heroin in the 700 block of North Johnson street in New Orleans, Detective Jackson and his partner drove to that location in an unmarked car. When the officers arrived they noticed respondent, who matched the informant's description, standing by himself in a courtyard of the Lafitte Housing Project holding a paper bag in his hand. The officers pulled into a driveway and parked their vehicle no more than four or five feet from respondent. "As we exited the vehicle and he observed that we were *648 the police," Officer Jackson testified, "he threw down the object." Jackson retrieved the bag, which contained heroin, while his partner stopped respondent. Jackson freely conceded that he did not observe respondent engage in any conduct more suspicious than pacing back and forth in the court yard before the officers parked in close proximity to him and that he considered his unknown informant reliable only to the extent that he provided an accurate clothing description of respondent. Still, the officer also testified that when he and his partner arrived at the location, they did not turn on their siren or blue light and did not otherwise identify themselves over their vehicle's P.A. system. Nor did they say anything to respondent as they began exiting their car. In fact, Jackson testified, he never had the chance to investigate the anonymous tip because as soon as the officers pulled up, respondent "threw the package down to the ground."
The tip provided by the anonymous informant may have provided accurate information with regard to respondent's clothing and physical location but it did not, without additional corroborating circumstances, provide reasonable suspicion or probable cause that respondent was engaged in criminal activity. Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000)("The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."). Nevertheless, "the police ... have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." State v. Duplessis, 391 So.2d 1116, 1117 (La.1980) (citations omitted). The officers therefore had the right to approach respondent in the project court yard and to engage him in conversation. Officer Jackson's uncontested testimony indicates that they had not yet physically restrained respondent when he panicked and discarded his paper bag; nor had they attempted to assert any official authority over him by ordering or signaling him to stop. Cf. State v. Chopin, 372 So.2d 1222, 1224-25 (La.1979)(police "seized" the defendant by turning their patrol car to block his path and activating their red and blue lights). In addition, while Louisiana protects its citizens from "imminent actual stops" not based on reasonable suspicion or probable cause, State v. Tucker, 626 So.2d 707, 712 (La.1993), Officer Jackson and his partner had not yet indicated by word or action that an actual stop, i.e., a forcible detention, or seizure of the person, was about to take place to effectuate Jackson's un-communicated intent to investigate the tip from his anonymous informant. Tucker, 626 So.2d at 712 ("It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual stop' of the individual is `imminent.'") (footnote omitted). Under these circumstances, Officer Jackson lawfully seized and searched the bag discarded by respondent before any unlawful intrusion on respondent's right to privacy occurred. Tucker, 626 So.2d at 710 ("If ... a citizen abandons or otherwise dispose of property prior to any unlawful intrusion into the citizen's right to be free from governmental interference, then such property may be lawfully seized and used against the citizen in a resulting prosecution.").
The ruling of the trial court granting respondent's motion to suppress is therefore reversed, and this case is remanded to the district court for further proceedings consistent with the views expressed herein.
*649 JUDGMENT REVERSED; CASE REMANDED.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
I dissent from the majority's conclusion that the evidence was lawfully seized. It is well settled that any evidence abandoned by a citizen and recovered by the police as a direct result of an unconstitutional seizure may not be used in a resulting prosecution against the citizen. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Chopin, 372 So.2d 1222, 1224 (La. 1979). LSA C.Cr.P. art. 215.1 permits a police officer to stop a citizen in a public place and question him. However, the right to make such an investigatory stop must be based upon a reasonable suspicion that the individual has committed or is about to commit an offense. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389, 391 (La.1983). Determining whether "reasonable, articulable suspicion" existed for an investigatory stop requires weighing all of the circumstances known to the police at the time the stop was made. State v. Williams, 421 So.2d 874, 875 (La.1982).
In this case, armed with information given to them by an anonymous tipster, the police officers herein arrived on the scene. The officers did not observe the defendant engaging in any conduct which would justify a belief that he had committed or was about to commit a criminal offense. According to the officer's own testimony, the defendant was merely pacing back and forth in the courtyard of the housing development. Yet, these officers parked the police unit within close proximity on the public sidewalk, exited the vehicle, and approached him. Clearly defendant's freedom of movement was restricted. The officers demonstrated by their actions their intent to seize or detain defendant. In my mind, the officers' conduct constituted an imminent actual stop, in violation of defendant's constitutional rights.
Accordingly, I would affirm the decisions of the lower courts to suppress the evidence seized by the police officers.