824 So.2d 1127 (2002)
STATE of Louisiana
v.
Ernest J. DOBARD.
No. 2001-KK-2629.
Supreme Court of Louisiana.
June 21, 2002.
*1128 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Andre R. Belanger, for Appellant.
*1129 Derek J. Honore, for Respondent.
KIMBALL, Justice.
We granted certiorari to consider whether evidence abandoned by defendant during a "vice check" of a bar and its patrons was recovered by the police as a direct result of an unconstitutional seizure. For the reasons discussed herein, we conclude that, notwithstanding the fact that the officers harbored an uncommunicated subjective intent to search defendant, defendant was not illegally seized prior to his abandonment of crack cocaine. Therefore, we find the evidence was lawfully seized and can be used against defendant in a prosecution for possession of crack cocaine.

Facts and Procedural History
On the evening of March 6, 2001, five Third District Narcotics Detectives assigned to the Vice Unit entered Lo Dee's bar at 3506 Hamburg Street in the St. Bernard Housing Development for the purpose of conducting a "vice check." One of the detectives, Officer Harold Wischan, described a "vice check" as follows:
We go into an establishment, check patrons for weapons, narcotics, warrants; make sure that the bar is up to par with the codes, license, things of that nature.
Upon entering the bar, the officers, who were in plain clothes, announced their presence and Officer Wischan observed defendant, Ernest Dobard, sitting by himself in a well-lit booth along the wall to the right. When Officer Wischan and his partner approached, defendant acted in a suspicious manner, turning his head so that the detectives could not see his face, and Officer Wischan observed defendant discard something with his left hand off the bench seat. Defendant then got up from the booth and attempted to walk away. The officer stopped him and Officer Wischan's partner retrieved four pieces of what appeared to be crack cocaine from the booth area where defendant had been sitting. Defendant was advised of his rights and placed under arrest for possession of crack cocaine.
The retrieved substances subsequently tested positive for cocaine and, on May 4, 2001, the State charged defendant with possession of crack cocaine in violation of La. R.S. 40:967(C)(2). On May 9, 2001, defendant entered a plea of not guilty. On July 23, 2001, the trial court held a hearing on defendant's motion to suppress the evidence. The State called one witness, Officer Wischan, and after hearing testimony and argument, the trial court suppressed the evidence, found no probable cause to bind defendant over for trial, and released defendant. The State's motion for a stay was denied.
The court of appeal denied the State's application for supervisory writs and request for a stay order, finding a stop of defendant was imminent at the time he discarded the crack cocaine and such stop was not based on any reasonable suspicion. State v. Dobard, 01-1416 (La.App. 4 Cir. 8/27/01) (unpublished decision).
This court granted certiorari upon the State's application to consider the correctness of the trial court's determination that the evidence was the product of an illegal seizure. State v. Dobard, 01-2629 (La.3/8/02), 810 So.2d 1155.

Discussion
The Fourth Amendment of the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. The police may not, therefore, make a warrantless arrest of a citizen without probable cause that the citizen has engaged in criminal conduct. State v. Tucker, 626 So.2d 707, 710 (La. 1993). Additionally, while the police may *1130 briefly detain and interrogate an individual in a public place, they may make such an investigatory stop only if it is based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tucker, 626 So.2d at 710; State v. Andrishok, 434 So.2d 389, 391 (La.1983); State v. Chopin, 372 So.2d 1222, 1224 (La. 1979).
These constitutional protections, however, do not proscribe all interaction between the police and other individuals. Police officers "have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." State v. Johnson, 01-2436, p. 3 (La.1/25/02), 806 So.2d 647, 648 (quoting State v. Duplessis, 391 So.2d 1116, 1117 (La.1980)). The police do not need probable cause to arrest or reasonable cause to detain an individual each time they approach a citizen. State v. Belton, 441 So.2d 1195, 1199 (La.1983). As long as the person approached by a law enforcement officer remains free to disregard the encounter and walk away, the foregoing constitutional provisions are not implicated. Tucker, 626 So.2d at 710; Belton, 441 So.2d at 1199.
In order to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. Consequently, property abandoned by an individual and recovered by the police as a direct result of an unconstitutional seizure may not be used in a subsequent prosecution. Tucker, 626 So.2d at 710. If, however, property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in a resulting prosecution. Id. In this latter situation, the citizen has no reasonable expectation of privacy and there is no violation of his custodial rights. Id. Because these rules of inadmissibility are intended to protect individuals from unwarranted, forcible governmental interference, "it is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the `right to be left alone' is violated, thereby rendering unlawful any resultant seizure of abandoned property." Id. at 710-11 (quoting Belton, 441 So.2d at 1199) (emphasis in original).
In Tucker, this court, adopting the U.S. Supreme Court's pronouncement in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that an individual has been "actually stopped," i.e., seized, for purposes of La. Const. art. 1, § 5 when he submits to a police show of authority or when he is physically contacted by the police. Additionally, this court determined that even when an actual stop has not been effectuated, our constitution still mandates a finding that an individual has been seized if an actual stop is "imminent." An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Tucker, 626 So.2d at 712 (emphasis in original).
In the instant case, the relevant inquiry is whether, at the time defendant abandoned the crack cocaine, the police officers had illegally accomplished an actual or imminent actual stop.
At the suppression hearing, Officer Wischan testified that the officers in his unit entered Lo Dee's bar wearing plain clothes to conduct a "vice check," which he described as a check of patrons for weapons, *1131 narcotics, and warrants, and a check of the bar for code or license violations. Officer Wischan explained that the officers announced their presence upon entering the bar and he then observed defendant sitting alone in a booth to his right along the wall. He testified that as he and his partner approached defendant, defendant turned his head so that the officers could not see his face and discarded something off the bench seat with his left hand. Defendant then got up and attempted to walk off. Officer Wischan stopped defendant and his partner retrieved four pieces of crack cocaine from the booth area.
On cross-examination, Officer Wischan explained why he approached defendant as follows:
Q: To check what?
A: For weapons for our safety. When we first go in a bar, we want to check for our safety first, make sure it's secure, then we go and start checking the business for their license and everything else.
Q: So you were going over to search this man?
A: No, I was going to make sure that he had no weapons in his sightin his grasp, where he could just reach down and grab a gun or something and shoot one of us.
Finally, on redirect examination, the following exchange took place between Officer Wischan and the Assistant District Attorney:
Q: Okay. Now, Officer, did you put your hands on this defendant or stop him in any way before he threw down this material?
A: No, ma'am.
Q: All right. At what point did he throw the drugs down, the four pieces of crack?
A: When we first started to approach him.
Q: When you first started to approach him?
A: Right.
As an initial matter, we note the vice unit had no authority whatsoever to enter a bar and search its patrons for narcotics.[1] Had the officers been searching defendant's person for narcotics based solely on the fact it was conducting a so-called "vice check," then any contraband recovered would clearly be inadmissible in a subsequent prosecution. In the instant case, however, the record contains no indication that the officers made any attempt to search defendant, or any other patron, for narcotics.
The officers had the right to check the bar's compliance with applicable laws, see e.g. La. R.S. 26:93(B),[2] and to be present *1132 in Lo Dee's bar, a public establishment, during its normal business hours. See 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.4(b) (3rd ed. 1996) ("[A]s an ordinary matter law enforcement officials may accept a general public invitation to enter commercial premises for purposes not related to the trade conducted thereupon. On this basis, courts have consistently held that police, albeit motivated by an investigative purpose, conducted no search by merely entering such premises as a ... pool hall, bar, [or] restaurant....") (collecting cases) (footnotes omitted); 1 WILLIAM E. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS, (2nd ed. 2002) ("An observation made by a government agent when he is present on premises open to the public under the same circumstances as any other member of the public does not constitute a search within the meaning of the Fourth Amendment.") (collecting cases). See also Lewis v. U.S., 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312, 316 (1966) ("A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant."); State v. Lund, 409 So.2d 569, 570 (La.1982) ("The police officers' reason for entering the Club Desire is irrelevant. It is a public establishment, which the officers were free to enter for any reason or no reason. Defendants had no reasonable expectation of privacy on the premises of the Club Desire. The officers had the right to accept the bar's invitation to the public. There was no intrusion into a protected place." (citations omitted)). In the instant case, the officers were in a place they had a right to be and possessed the same right as any citizen to approach an individual and engage him in conversation. State v. Jackson, 00-3083 (La.3/15/02), 824 So.2d 1124; State v. Johnson, 01-2436 (La.1/25/02), 806 So.2d 647; Belton, 441 So.2d at 1199. "It is settled that `law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen...." State v. Lewis, 00-3136, p. 3 (La.4/26/02), 815 So.2d 818, 820 (quoting Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (White, J.)).
By merely announcing their presence as police officers when they entered the bar and starting to approach defendant, the officers had not yet seized defendant when he discarded the crack cocaine. The record does not reveal that the officers had drawn their weapons, physically contacted defendant, ordered or signaled him to stop, or otherwise asserted any *1133 official authority over him when he panicked and discarded the contraband. See Jackson at pp. 2-3, 824 So.2d at 1126; Johnson at p. 3, 806 So.2d at 648. The police do not seize a person simply by identifying their presence and approaching an individual without taking any additional measures to assert their authority over the person that would not be expected from the encounter if it had occurred with an ordinary citizen. Jackson at p. 3, 824 So.2d at 1126.
Furthermore, at the point defendant discarded the crack cocaine, an actual stop of defendant was not imminent. The officers had not yet indicated by word or action that a forcible detention was about to take place. In fact, the officers had not yet used any force, let alone come upon defendant "with such force that, regardless of [his] attempts to flee or elude the encounter, an actual stop" of him was virtually certain. Tucker, 626 So.2d at 712.
The fact that the officers might have held a subjective intent to search patrons of Lo Dee's bar for narcotics or weapons is of no moment because defendant discarded the contraband before, rather than after, the officers acted to effectuate their subjective intent. This was made clear in our recent decisions in Jackson and Johnson, supra. In both of those cases, police officers received a tip from an informant that a certain described individual was selling drugs in a specified location. In Jackson, once the officers reached the location and found the situation as described by the informant, they observed defendant Jackson "walking fast" to the porch of a double house. The officers stopped, got out of their vehicle, and positioned themselves at the fence in front of the property where they identified themselves as police officers. Defendant Jackson appeared startled and dropped a packet of cocaine from the porch to the ground. This court held defendant was not actually stopped, nor was an actual stop imminent, when he discarded the cocaine, and the evidence was legally seized because the contraband was discarded before the officers acted on their subjective intent to stop defendant on the basis of the confidential informant's tip. Likewise, in Johnson, the officers found the scene as described by the anonymous informant and parked their unmarked car no more than four or five feet from defendant. As they exited the vehicle and defendant realized they were police officers, defendant threw down a bag containing heroin. While recognizing that the tip provided by the anonymous informant did not alone provide reasonable suspicion or probable cause that defendant was engaged in criminal activity, this court held the heroin was legally seized since defendant discarded it before the officers took any steps to effectuate their uncommunicated intent to conduct an investigation on the basis of the tip.
Under the circumstances presented in this case, the officers had a right to be present in the bar and, while there, to approach defendant. The officers' identification of themselves and approach towards defendant effectuated neither an actual stop nor an imminent actual stop of defendant. Defendant threw down the crack cocaine prior to any unlawful intrusion into his right to be free from governmental interference. Thus, at the time defendant abandoned the crack cocaine, he had not been illegally seized. Once the officers observed defendant's nervous behavior and saw him discard something off the booth seat and then attempt to walk away, they had at least reasonable cause to believe defendant was engaged in criminal conduct and could therefore stop him and retrieve the discarded evidence. For these reasons, the trial court erred in granting defendant's motion to suppress the crack cocaine *1134 and in finding a lack of probable cause.

Conclusion
For the foregoing reasons, the crack cocaine abandoned by defendant prior to any unlawful intrusion into his right to be free from governmental interference was lawfully seized. The trial court's determination that the evidence should be suppressed and its finding of a lack of probable cause are therefore reversed. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
JOHNSON, J., dissents and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., dissenting.
Trial courts are vested with great discretion when ruling on a motion to suppress. State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239; writ denied, 94-2058 (La.11/11/94), 657 So.2d 1021. Accordingly, I would respect the trial court's decision and affirm the decision to suppress the evidence in this case.
The evidence adduced at the suppression hearing reveals that the police officers entered the bar to check the bar's license. Rather than checking the license upon entering the establishment, the officers proceeded to "check patrons for weapons, narcotics, [and] warrants...." (Emphasis added). Two of the officers immediately approached defendant, who was seated alone at a booth. As the trial court indicated, none of the patrons would have been approached had this been a more "upscale" establishment with more affluent patrons.
CALOGERO, Chief Justice, dissents and assigns the following reasons.
I do not believe that the district court judge abused his discretion when he granted defendant's motion to suppress the evidence. State v. Burkhalter, 428 So.2d 449 (La.1983). When explaining the procedure for a "vice check," one officer testified that the officers "go into an establishment, check patrons for weapons, narcotics, warrants; make sure that the bar is up to par with codes, license, things of that nature." Given this testimony, I believe that the district court judge could have reasonably determined that the officers' purpose for entering the bar was not simply to investigate the licensing of the establishment but rather to conduct a warrantless search of the patrons. Therefore, I would not reverse the district court's suppression of the evidence.
NOTES
[1] La. R.S. 14:95.4 provides that any person entering an alcoholic beverage outlet shall be deemed to have consented to a reasonable search of his or her person for any firearm by a law enforcement officer without the necessity of a warrant. While this statute permits a warrantless search of patrons of certain alcoholic beverage outlets for firearms, it is not relevant under the facts of this case and its applicability has not been asserted by the State.
[2] La. R.S. 26:93, part of this state's Alcoholic Beverage Control Law, provides in part:

The procedure for the suspension or revocation of permits shall be substantially as follows:
A. The commissioner shall have periodic examinations made of the business of all persons holding permits under this Chapter. If a violation of any provision of this Chapter or of any rule or regulation of the commissioner is observed, the commissioner may give the permittee a written warning. If the permittee has been previously warned or if the violation is of a sufficiently serious nature, the commissioner may instruct any agent or employee of the commissioner to prepare and file, upon information and belief based upon the facts in hand, a petition for suspension or revocation of the permit, setting forth the facts and circumstances of the violation, and shall thereupon summon the permittee to appear and show cause why the permit should not be suspended or revoked.
B. The secretary of the Department of Revenue, municipal authorities, sheriffs, and other law enforcing officers shall have periodic investigations made of the business of all permittees within their respective jurisdictions. If any violation of any provision of this Chapter or of any rule or regulation of the commissioner is observed, such authorities may give the permittee a written warning. If the permittee has been previously warned or if the violation is of a sufficiently serious nature, they shall file an affidavit with the commissioner, setting forth the facts and circumstances of the violation. Thereupon, the commissioner shall summon the permittee to appear and show cause why his permit should not be suspended or revoked.