CARTER, C.J.
 

 |2The defendant, Damineo A. Bozeman, was charged by bill of information with possession of a Schedule II controlled dangerous substance (cocaine), a violation of La. R.S. 40:967 C. The defendant pled not guilty. The defendant filed a motion to suppress the evidence seized, which was denied. Following a jury trial, the defendant was found guilty as charged. He was sentenced to five years at hard labor. The State filed a habitual offender bill of information, and following a hearing on the matter, the defendant was adjudicated a fourth felony habitual offender. The trial court vacated the underlying five-year sentence and sentenced the defendant to thirty years at hard labor. The defendant now appeals, designating one assignment of error. We affirm the conviction and sentence.
 

 FACTS
 

 On November 9, 2005, several members of the Assumption Parish Sheriffs Office SWAT team were conducting street sweeps in high-drug areas based mostly on anonymous narcotics complaints. Following a lead based on a complaint by a landowner of property on Pleasant Lane in Belle Rose, the officers drove to the area. The landowner, who owned property with rental trailers on it, identified the defendant by name as someone who was selling drugs in that area. The defendant’s girlfriend, Sabrina Bradford, lived in one of the rental trailers on Pleasant Lane, and the defendant stayed with Sabrina about five or six days a week.
 

 At about 6:30 p.m., five officers in two vehicles turned onto Pleasant Lane. Sergeants Hayes Coddou and Byron Parker and Deputies Tyson Mire and Cliff Crochet were in the lead vehicle. Lieutenant Michael “Mike” |nBrown was following in a second vehicle. They observed the defendant standing in the open driver’s side doorway of a Mitsubishi Galant, which was parked half on the road and half off the road. Sabrina was the owner of the Ga-lant. The Galant was directly across the street from Sabrina’s trailer. The officers approached the defendant, and Sergeant Coddou asked him for some form of identification, which the defendant refused to produce. Sergeant Coddou again asked the defendant for his identification. The defendant again refused, cursed at Ser
 
 *901
 
 geant Coddou, and made a very quick move toward the center console of the vehicle. The officers grabbed the defendant and tried to pull him out of the vehicle. After several minutes of struggling, the officers subdued the defendant, Mirandized him, and handcuffed him. Because it was dark, Sergeant Coddou used his flashlight to look inside of the vehicle through the windshield. He observed three rocks of crack cocaine in a plastic bag inside the opened center console. Lieutenant Brown also observed the cocaine in the center console with his flashlight. Sergeant Coddou retrieved the cocaine from the vehicle. The three rocks of crack cocaine weighed a total of 13.55 grams.
 

 ASSIGNMENT OF ERROR
 

 In his sole assignment of error, the defendant argues the trial court erred in denying his motion to suppress evidence. Specifically, the defendant contends that he was illegally seized by the police when they stood around him, effectively preventing him from walking away prior to any criminal activity being observed and prior to the drugs being discovered.
 
 [1]
 

 |4Trial courts are vested with great discretion when ruling on a motion to suppress. Consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion.
 
 State v. Long,
 
 2003-2592, p. 5 (La.9/9/04), 884 So.2d 1176, 1179,
 
 cert. denied,
 
 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005).
 

 The Fourth Amendment of the United States Constitution and Article I, Section 5, of the Louisiana Constitution protect persons from unreasonable searches and seizures. The police may not, therefore, make a warrantless arrest of a citizen without probable cause that the citizen has engaged in criminal conduct.
 
 State v. Dobard,
 
 2001-2629, p. 3 (La.6/21/02), 824 So.2d 1127, 1129. Additionally, while the police may briefly detain and interrogate an individual in a public place, they may make such an investigatory stop only if it is based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity.
 
 See
 
 La. Code Crim. P. art. 215.1;
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 
 Dobard,
 
 2001-2629 at p. 3, 824 So.2d at 1129-1130.
 

 The threshold issue is whether the initial encounter between the police and the defendant constituted a seizure within the meaning of the Fourth Amendment. If there was no seizure, the Fourth Amendment is not implicated. If there was a seizure, however, such an investigatory stop must be based on reasonable suspicion that a person is committing, has committed, or is about to commit an offense.
 
 See
 
 La.Code Crim. P. art. 215.1 A.
 

 Ir,In
 
 State v. Oliver,
 
 457 So.2d 1269, 1271 (La.App. 1st Cir.1984), we stated:
 

 The Fourth Amendment protects citizens against unreasonable searches and seizures, but not every encounter between a citizen and a policeman involves a “seizure.”
 
 Terry v. Ohio,
 
 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). “[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person.”
 
 Id.
 
 at 16, 88 S.Ct. at 1877. “As long as a reasonable person would feel free to disregard the encounter and walk away, there has been no ‘seizure.’ ”
 
 State v. Ossey,
 
 446
 
 *902
 
 So.2d 280, 285 (La.1984[) ] (quoting
 
 Florida v. Royer,
 
 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983));[
 
 2
 
 ]
 
 State v. Belton,
 
 441 So.2d 1195, 1199 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Furthermore, if a citizen after being approached by law enforcement officers consents to stop and answer questions, there is no Fourth Amendment violation. “If there is no detention — no seizure within the meaning of the Fourth Amendment— then no constitutional rights have been infringed.”
 
 Florida v. Royer,
 
 103 S.Ct. at 1324.
 

 Sergeant Coddou testified at both the motion to suppress hearing and the trial.
 
 [3]
 
 According to his trial testimony, Sergeants Coddou and Parker, along with Deputies Mire and Crochet, were in an unmarked Jeep Cherokee when they approached the defendant. The officers were wearing bulletproof vests with the word “Sheriff’ on the front and back. They observed the defendant standing in the open driver’s side door of a Mitsubishi Galant parked halfway on and halfway off the road. Shortly thereafter, Lieutenant Brown, also wearing Sheriffs Office apparel, arrived in a separate vehicle. Sergeant Coddou and the other three officers exited the Jeep, which was |r,pulled up behind the Galant. The officers identified themselves, and Sergeant Coddou asked the defendant for his identification. Sergeant Parker testified at trial on direct examination that he stood behind Sergeant Coddou and he (Parker) and the other officers made “a horseshoe shape around him, just for support.” On cross-examination, Sergeant Parker was asked, “Officer Parker, you testified that y’all formed like a horseshoe around Mr. Bozeman?” He responded, “Yes, sir.” Lieutenant Brown testified at trial that Sergeant Coddou was “faced up” with the defendant, “and the other officers kind of like made a maybe [sic] a half circle around him in the entry of the doorway.” Lieutenant Brown further testified that, when the four officers approached the defendant, he (Brown) walked to the passenger side of the Galant and stood there. When the defendant refused to produce identification, Sergeant Coddou again asked him for some form of identification. The defendant responded, “F[ — ] no,” and made a quick move toward the inside of the vehicle.
 
 [4]
 
 According to Lieutenant Brown, Sergeant Parker, and Deputies Crochet and Mire, no officer drew his weapon.
 
 [5]
 

 Based on the foregoing, we find the defendant was seized pursuant to an investigatory stop. The officers involved in the stop were not on routine patrol; rather, they were part of the Sheriffs Office SWAT team conducting “street sweeps” and, based on narcotics complaints, specifically targeting the |7high-drug area where the defendant was spotted. The defendant was approached by five officers. Four of the officers spread out around the defen
 
 *903
 
 dant, while another officer positioned himself on the other side of the vehicle behind the defendant. Lieutenant Brown testified at the motion to suppress hearing that, after the defendant first refused to produce his identification, “[w]e advised him that we needed identification to check and make sure he wasn’t wanted or a wanted person or anything like that.” We find that under these circumstances a reasonable person would not have felt free to disregard the encounter and walk away.
 
 See State v. Mareno,
 
 530 So.2d 593, 600 (La.App. 1st Cir.),
 
 writ denied,
 
 533 So.2d 354 (1988) (where this court stated that “[ejxamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.”). Since the defendant was seized within the meaning of the Fourth Amendment, we must determine whether the officers had reasonable suspicion to effect the investigatory stop.
 

 In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’”
 
 State v. Kalie,
 
 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting
 
 United States v. Cortez,
 
 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police, therefore, must articulate something more than an inchoate and unpartic-ularized suspicion or hunch.
 
 United States v. 8Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification.’ ”
 
 Sokolow,
 
 490 U.S. at 7, 109 S.Ct. at 1585 (quoting
 
 INS v. Delgado,
 
 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account “the totality of the circumstances — the whole picture,” giving deference to the inferences and deductions of a trained police officer “that might well elude an untrained person.”
 
 Cortez,
 
 449 U.S. at 417-418, 101 S.Ct. at 695. The court also must weigh the circumstances known to the police “not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.”
 
 Cortez,
 
 449 U.S. at 418, 101 S.Ct. at 695;
 
 State v. Huntley,
 
 97-0965, pp. 2-3 (La.3/13/98), 708 So.2d 1048, 1049 (per curiam).
 

 At the motion to suppress hearing, Lieutenant Brown testified that the drug task force was in the Belle Rose area based on anonymous complaints about suspected narcotics dealings there. He further testified that the defendant was named as a possible suspect who was dealing drugs. Sergeant Coddou testified at the motion to suppress hearing that the officers drove down Pleasant Lane because Sheriff Wag-uespack had received phone calls from the landowner of the rental trailers on that street informing Sheriff Waguespack that the defendant was selling drugs. Thus, the presence of the officers on Pleasant Lane was based not merely on anonymous calls about drug activity but on the call of a self-identified citizen informant who identified the defendant by name as a person selling drugs in that area. Citizen informer reports based on firsthand knowledge carry a high indicia | 9of credibility in the determination of probable cause.
 
 State v. Morris,
 
 444 So.2d 1200, 1203 (La.1984). The citizen informer is a presumptively inherently credible source.
 
 Id.
 

 Sergeant Coddou testified at trial that Pleasant Lane was a very narrow street. When they turned onto the street, they observed a group of trailers to the right
 
 *904
 
 and the defendant standing in the open door of Sabrina’s vehicle. Sabrina’s vehicle was immediately across the street from her trailer. The officers did not observe anyone else on the street. Whether the officers had a “minimal level of objective justification” to detain the defendant turns on the totality of all of the circumstances known to them: a vehicle parked halfway on the road with someone standing in the driver’s side door; the tip by the landowner citizen informer who identified the defendant by name as someone selling drugs in the area; and the defendant’s presence not only in an area known to the officers for its high level of narcotics activity but directly in front of the trailer that sat on the property owned by the complaining landowner. We find the coalescence of these circumstances gave the officers a particularized and objective basis for detaining the defendant “to maintain the status quo momentarily while obtaining more information.”
 
 State v. Fauria,
 
 393 So.2d 688, 690 (La.1981).
 
 See Huntley,
 
 97-0965 at pp. 3-4, 708 So.2d at 1050.
 
 [6]
 

 Accordingly, the officers conducted a valid investigatory stop, and the seizure of the cocaine was, therefore, legally proper. We find no abuse of [ indiscretion by the trial court in denying the defendant’s motion to suppress the evidence. The assignment of error is without merit.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 DOWNING, J., concurs.
 

 [1]
 

 . The defendant does not contest the straggle with the police while in the vehicle, the subsequent arrest, or the discovery of the drags under plain view.
 

 [2]
 

 .
 
 State v. Ossey,
 
 446 So.2d 280, 285(La.),
 
 cert. denied,
 
 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984).
 

 [3]
 

 . In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence giVen at the trial of the case.
 
 State v. Chopin,
 
 372 So.2d 1222, 1223 n. 2 (La.1979).
 

 [4]
 

 . At the motion to suppress hearing, Sergeant Coddou testified that, upon asking the defendant a second lime for identification, the defendant responded, "F[ — ] you.”
 

 [5]
 

 .Rontrell Wise testified at the motion to suppress hearing and at trial. Rontrell testified he was standing outside near Sabrina’s trailer when the officers turned onto Pleasant Lane. According to Rontrell, Sergeant Coddou and Deputies Mire and Crochet had their weapons drawn when they approached the defendant and yelled at him to "hit [the] ground.”
 

 [6]
 

 . Although not argued by the defendant, we note that when the defendant turned and made a quick move toward the center console of the vehicle, the officers clearly were justified in restraining the defendant. Given the totality of the circumstances, the officers had no way of knowing whether the defendant might have been reaching for a weapon.
 
 See State v. Sylvester,
 
 2001-0607, pp. 5-6 (La.9/20/02), 826 So.2d 1106, 1109 (per cu-riam).