36 So.3d 209 (2010)
STATE of Louisiana
v.
Richard HAMILTON.
No. 2009-KK-2205.
Supreme Court of Louisiana.
May 11, 2010.
*210 James D. Caldwell, Atty. Gen., Leon A. Cannizzaro, Jr., Dist. Atty., Nisha Sandhu, Asst. Dist. Atty., for Applicant.
David Belfield, III, New Orleans, for Respondent.
*211 CIACCIO, J.[*]
We granted certiorari to determine whether evidence abandoned by defendant during his encounter with Orleans Parish Police Officers Thomas Clark and Alex Brady was the result of an unconstitutional seizure. For the reasons discussed herein, we conclude that the officers' encounter with the defendant was voluntary, and Officer Brady's instruction for the defendant to remove his hands from his pockets did not give rise to a seizure of the defendant. Therefore, we find the evidence was lawfully seized and can be used against defendant in prosecution.

FACTS AND PROCEDURAL HISTORY
On Thursday, January 17, 2008, Officers Alex Brady and Thomas Clark were monitoring the area around 2013 South Claiborne Avenue in New Orleans, due to a recent spike in batteries and robberies against Hispanic male immigrants in the area. While in their vehicle, the officers observed defendant, Richard Hamilton, walking back and forth in front of the Discount City Convenience Store. At one point, defendant paused and peered into the establishment without entering. The officers decided they wished to speak with defendant to "find out what his intentions were." According to the testimony of Officer Clark, the officers called the subject over from their vehicle, but the defendant continued to walk away. Officer Clark further testified the officers then exited their vehicle, and with no further verbal instruction to do so, defendant stopped, stuck his hands in his pockets, turned around, and began walking toward the officers
Thereafter, as a safety measure, Officer Brady instructed defendant to remove his hands from his pockets as he approached. As the defendant did so, Officer Brady instructed Officer Clark to handcuff the defendant. Officer Clark assumed this meant that Officer Brady saw the defendant drop some contraband. Officer Clark also testified that while he was searching and handcuffing the defendant, he read the defendant his Miranda rights from a card while Officer Brady retrieved a piece of tin foil from the ground, which it was later determined contained heroin. Officer Clark testified he assumed the defendant dropped the foil as he removed his hands from his pockets, but he did not personally observe this.
During a search incident to the arrest, the officers found $1,600 in cash in defendant's socks but no more drugs. Officer Clark testified he did not get a statement from the defendant and was not privy to any statement taken from the defendant.
Defendant was charged by Bill of Information on March 19, 2008, with one count of possession of heroin with the intent to distribute. After a number of status hearings, on May, 21, 2009, the court conducted a hearing on defendant's Motion to Suppress the heroin and his statements as the result of an unlawful seizure. Only Officer Clark was available to testify at the hearing, and the state requested the motion be kept open for Officer Brady's testimony, but the District Court found it unnecessary and granted the defendant's motion stating, "Court finds no probable cause; motion to suppress evidence granted; motion to suppress statement is granted also." The state then gave notice of its intent to seek writs.
*212 The Louisiana Fourth Circuit Court of Appeal denied the writ with lengthy reasons, stating that defendant was seized for the purposes of the Fourth Amendment when he was ordered to take his hands out of his pockets and he obeyed, rendering the recovered heroin unconstitutionally seized. The state then filed a writ application with this court, and the writ was granted on January 8, 2010. State v. Hamilton, 09-2205 (La.1/8/10), 24 So.3d 855.

DISCUSSION
The Fourth Amendment to the U.S. Constitution protects citizens against unreasonable searches and seizures. Similarly, La. Const. Art. 1, Sect. 5 provides in part, "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."
In order to discourage police misconduct, any evidence recovered as a result of an unconstitutional search or seizure is inadmissible. State v. Dobard, 01-2629 (La.6/21/02), 824 So.2d 1127, 1130. Therefore, "property abandoned by an individual and recovered by the police as a direct result of an unconstitutional seizure may not be used in a subsequent prosecution." State v. Tucker, 626 So.2d 707, 710 (La.1993). However, if evidence or property is abandoned prior to any unlawful intrusion on a citizen's right to be free from governmental interference, then the property can be lawfully seized and used in prosecution. Id. Further, "it is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the right to be left alone is violated, thereby rendering unlawful any resultant seizure of abandoned property." Id. at 710-711 (quoting State v. Belton, 441 So.2d 1195 (La.1983)).
In State v. Fisher, this court recognized a useful three-tiered analysis of interactions between citizens and the police from United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992). In the first tier, there is no seizure or Fourth Amendment concern during mere communication with police officers and citizens where there is no coercion or detention. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183. The second tier consists of brief seizures of a person, under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal activity. Fisher, 720 So.2d at 1183. The third tier is custodial arrest where an officer needs probable cause to believe that the person has committed a crime. Id.
Within the first tier, officers have "the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." Dobard, 824 So.2d at 1130 (quoting State v. Johnson, 01-2436, p. 3 (La.1/25/02), 806 So.2d 647, 648). Further, the police do not need probable cause to arrest or reasonable suspicion to detain an individual each time they approach a citizen. Dobard, 824 So.2d at 1130. As long as the person approached by the officers remains free to disregard the encounter and walk away, there are no constitutional implications. Id. In State v. Dobard, this court stated, "It is settled that `law enforcement officers' do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen ...." 01-2629, p. 8 (La.6/21/02), 824 So.2d 1127, 1132 (quoting *213 Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)).
In adopting the U.S. Supreme Court's pronouncement in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), this court held in Tucker that an individual has been actually stopped or seized, for constitutional purposes, when he submits to a show of police authority or when he is physically contacted by the police. Tucker, 626 So.2d at 712. Further, in State v. Fisher this court stated, "A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave." 720 So.2d at 1183 (quoting State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713, 719).
The relevant inquiry in this case is whether and at what point the defendant was seized for constitutional purposes. It is necessary to determine when and if defendant sufficiently submitted to an official show of police authority such that he was seized under the Fourth Amendment. Under the first tier of interaction from Fisher, the officers had every right to approach the defendant and pose some questions to him if he was willing to listen. According to Officer Clark's uncontradicted testimony, the officers in this case simply called over to defendant, at which point defendant continued to walk away. Defendant obviously believed himself free to walk away, as even after being spoken to by the officers he continued on his way. Defendant's decision to ignore the officers and continue to walk away was well within his rights[1] as the police had asserted no authority over him. Thereafter, however, by his own decision and with no compulsion from the officers to do so, defendant stopped and turned around and began to approach the officers with his hands in his pockets.
At this point, out of concern for the officers' safety, Officer Brady instructed the defendant to take his hands out of his pockets as he approached. The Court of Appeal, in its writ denial, reasoned that this instruction from Officer Brady for the defendant to remove his hands from his pockets constituted a sufficient showing of authority from the officers, to which defendant submitted by obeying and removing his hands from his pockets. The Court of Appeal reasoned this brought the encounter into the second tier of police interaction requiring reasonable suspicion. We disagree. When the defendant was voluntarily walking toward the officers with his hands in his pockets, it created a concern for the officers' safety. The request for the defendant to remove his hands from his pockets was not coupled with any search, pat down, or intrusion into the privacy of the defendant. It was merely a reasonable, self-protective safety precaution for the officers in case the defendant who was approaching them had some sort of concealed weapon, as there had been a recent wave of violent crimes in the area. Cf. State v. Boyer, 07-0476, p. 21 (La.10/16/07), 967 So.2d 458, 471("Officer Guillot[ ] was trained for the purpose of officer safety, to order persons in these situations to remove their hands from their pockets .... the defendant's hand was not visible and a reasonably prudent person would be warranted in believing that his safety or that of others was in danger.")
As the defendant removed his hands, Officer Brady told Officer Clark to place *214 the defendant in handcuffs. Officer Clark testified that Officer Brady observed the defendant drop contraband as he was removing his hands from his pocket. While Officer Clark detained the defendant, Officer Brady retrieved the packet of foil, which was later determined to contain heroin. As the encounter was still voluntary under the first tier of police interaction and as the police officers were reasonable in requesting the defendant to remove his hands from his pockets as a safety measure, the contraband was abandoned prior to any unlawful intrusion into the defendant's right of freedom from governmental interference. As such, it was subject to lawful seizure.[2]
Similarly, in State v. Jackson, this court held recovered cocaine was legally seized after the defendant discarded his cocaine packet, even after police officers positioned themselves to stop him, approached the defendant, and identified themselves as police officers, because he discarded the cocaine before the officers acted to effectuate their subjective intent to stop him. 00-3083, p. 4 (La.3/15/02), 824 So.2d 1124, 1126-27. The court stated, "by merely identifying themselves as the police, before they asked respondent any questions, drew their weapons, or otherwise asserted their official authority over him, the officers had not yet `seized' the respondent." Id. at 1126. Also, in State v. Johnson, this court held no stop or seizure occurred and evidence was legally seized where officers parked their police car four to five feet from the defendant, at which time defendant threw down a bag later determined to be heroin. 01-2436 (La.1/25/02), 806 So.2d 647. The court in Johnson stated the officers "had not yet indicated by word or action that an actual stop, i.e., a forcible detention, or seizure of the person was about to take place." Id. at 648. Also, in State v. Britton, 633 So.2d 1208, 1209 (La. 1994), this court held the seizure of cocaine constitutional, after police followed the defendant into a gas station and were no more than one or two feet from defendant when he discarded the cocaine on a store shelf, reasoning that the officers "did not forcibly detain him, or make a show of their authority signalling [sic] that some form of official detention was imminent, until after he discarded the packet of cocaine."
In the present case, defendant was approaching the officers voluntarily with his hands in his pocket, and discarded the cocaine before the police showed any intent to seize him. After the defendant exercised his right to ignore the police officers, he voluntarily changed his mind and began walking toward the officers with concealed hands. The only intent communicated was for the defendant to take his hands out of his pockets out of concern for the officers' safety in having an individual approaching them with concealed hands. The instruction did not indicate any intent to detain, search, or seize the defendant. Thus, the instruction did not constitute an actual stop or seizure, making the subsequently abandoned contraband lawfully subject to police seizure.
In sum, defendant's encounter with the two officers was voluntary and did not intrude into his privacy. Their instruction to remove his hands from his pockets was based on concerns for officer safety and did not communicate an intent to stop, seize, or search the defendant. Prior to his abandoning the foil, the defendant was neither seized nor stopped, a fact that *215 made the package legally recoverable by the officers.
For the above reasons, we find the trial court erred in granting the defendant's Motion to Suppress the heroin and the statements made after the arrest. The ruling of the trial court is hereby reversed.
REVERSED.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice dissenting.
The trial court is afforded great discretion in ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, 122. For the reasons articulated by the court of appeal in its writ denial, I find no error in the trial court's ruling on the motion to suppress.
NOTES
[*] Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
[1] Absent a showing of police authority, "the individual `need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'" State v. Lewis, 00-3136, p. 4 (La.4/26/02), 815 So.2d 818, 820-821 (quoting Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)).
[2] See State v. Andrishok, 434 So.2d 389, 391 (La.1983). ("[Evidence discarded or abandoned] without any prior unlawful intrusion into a citizen's right of freedom from governmental interference ... may be lawfully seized.")