JOY COSSICH LOBRANO, Judge.
liThe State charged Donavon L. King with possessing methamphetamine, a violation of La. R.S. 40:967(C)(2). On April 14, 2011, the trial court held a preliminary *942 hearing and heard motions to suppress evidence and a statement. The trial court denied the motions. King filed a pre-trial writ to this Court from the denial of the motion to suppress evidence. This Court denied the writ because he had adequate remedy on appeal. State v. Donovan King, 2011-0654 (La.App. 4 Cir. 5/20/11), not published. On May 25, 2011, King pled guilty under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the issue of his motions to suppress. He was sentenced to two years, suspended, and two years of active probation. He was also ordered to pay $800.00 to the Judicial Expense Fund and $190.50 in court costs. This appeal followed.
State Trooper William Bosworth of the Louisiana State Police Narcotics Division testified that he conducted an investigation at 2222 North Rampart Street in New Orleans on January 5, 2011. Trooper Bos-worth received an anonymous tip that a man named “Donavon” lived at that address and was manufacturing, selling and distributing crystal methamphetamine. The tipster described Donavon only as a short white man with dark hair. The tipster also had seen a lot of traffic at 2222 |2North Rampart Street — the same vehicles would go there multiple times a week, staying a few minutes “here and there.”
Based on this information, Trooper Bos-worth’s division conducted surveillance at 2222 North Rampart Street. At approximately noon on January 5, 2011, they saw a white man enter the residence and exit with another man fitting Donavon’s description a few minutes later. Donavon was later identified as Donavon King. The men stood on the porch, looking up and down the street for a minute or two before a taxi picked them up. The police followed the taxi to a residence on St. Claude Avenue that the two men entered. Shortly thereafter, King and his companion came out of the St. Claude Avenue residence, and were observed walking to a convenience store or gas station at the corner of North Rampart and Governor Nicholls Streets.
After going into the store, King and his companion exited and stood or sat by the store wall. The police decided to question them. In total, four unmarked cars were involved. The car that Trooper Bosworth was in pulled up closest to the store. Another car pulled up off of Governor Nic-holls Street, and the other two “were set back.” Trooper Bosworth did not recall the specifics, but remembered approaching the two men with Detective Tragel, who had been riding with him. Trooper Bos-worth asked King his name, and he said, “Donavon King.” King’s companion was later identified as Mr. Barry.
Upon approaching the two men, Trooper Bosworth asked Barry to go with Officer Bartholomey, who had arrived in a different car from Trooper Bosworth and Detective Tragel. Barry complied. Trooper Bosworth was wearing his badge. Trooper Bosworth then proceeded to inform King that they had him under surveillance. He explained how they had received an anonymous tip, observed |sKing exit his house, and that they were now asking him about it. At that point, King put his head down and admitted, “I do have meth in my bag and I have meth at my house.” Upon this admission, King was placed under arrest and was verbally informed of his Miranda rights for the first time. Trooper Bosworth clarified that when King issued his admission, Trooper Bosworth was in the middle of explaining the investigation to him. No questions had been asked.
A search of Bang’s bag produced nothing. No contraband was discovered therein. When asked if he would consent to a search of his residence, King said he would. Everyone relocated to King’s *943 house. It was searched after King signed a consent form. King also signed and initialed a written Miranda statement of rights form at the house. A clear plastic bag containing crystal like shards, a gray and melon colored miniature suitcase containing a bag of methamphetamine; and a jar of crystal methamphetamine were all discovered in King’s house. The search also produced the following paraphernalia: scales, bags, a pipe with heavy residue, a drawer full of glass pipes and extra baggies, and other similar items. During the search, a roommate came home. King confirmed the roommate’s assertion that he did not know of the methamphetamine, telling Trooper Bosworth that his methamphetamine had nothing to do with his roommate. King also informed the investigating officers that some of the methamphetamine discovered in the house was the contraband that he thought was in his bag.
The State entered copies of the signed Waiver of Miranda Rights Form, the Consent to Search Form, and the criminalist report into the record. The criminalist report showed that the seized contraband tested positive for methamphetamine.
The record reveals no errors patent.
| ¿On appeal, King argues that the police made an illegal stop when they approached him at the convenience store, and that all evidence subsequently seized should have been suppressed because the seizure resulted from an illegal detention. He further argues that his subsequent permission to search his house was the result of this initial illegal detention. For reasons that follow, we conclude that the trial court properly found that there was no illegal detention.
The Fourth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits unreasonable searches and seizures. Similarly, La. Const. Art. 1, Sec. 5 protects “person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” Searches and seizures conducted without warrants issued on probable cause are per se unreasonable unless justified by narrowly drawn exceptions to the warrant requirement. State v. Surtain, 2009-1835, p. 7 (La.3/16/10), 31 So.3d 1037, 1043, citing Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In order to enforce the mandates of the Fourth Amendment and La. Const. Art. 1, Sec. 5, and discourage police misconduct, evidence recovered pursuant to an unconstitutional search or seizure is inadmissible. State v. Hamilton, 2009-2205, p. 3 (La.5/11/10), 36 So.3d 209, 212 (citation omitted). At a suppression hearing, the State bears the burden of proving the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D). A trial court’s determination of a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion. State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581.
The trial court denied the motion to suppress evidence based upon a finding that King spontaneously confessed upon the initial encounter with the Louisiana Instate Police. The trial court found that the confession was not the result of any police interrogation. We find no abuse of the trial court’s discretion in these findings.
Under the Fourth Amendment to the United States Constitution, a seizure or stop occurs when an individual either submits to the police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707, 711 (La.1993), citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Additionally, under La. Const. *944 Art. 1, Sec. 5, a seizure occurs where an actual stop is imminent. State v. Dobard, 2001-2629, p. 4 (La 6/21/02), 824 So.2d 1127, 1130. An actual stop is imminent “only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain.” State v. Tucker, supra, at 712. As long as the individual remains free to disregard the encounter and walk away, an officer may approach the individual and ask questions without probable cause or reasonable suspicion to detain the person. Dobard, 2001-2629, p. 3, 824 So.2d at 1130. The protections of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) apply only when a person is subject to a custodial interrogation and, thus, an officer need not formally advise a person not in custody of his rights prior to taking a statement in order for it to be admissible at trial. State v. White, 2011-208, p. 6 (La.App. 4 Cir. 9/28/11), 74 So.3d 748, 752.
Trooper Bosworth testified that he approached King and his companion with Detective Tragel. Though four police cars were involved at this point, Trooper Bos-worth testified that two of the cars remained “set back,” while the car he was in pulled up closest to the men as they sat in front of the convenience store. A second police car pulled up also. Trooper Bos-worth asked King’s companion to go speak |fito Officer Bartholomey while he and Detective Tragel spoke to King. Trooper Bosworth told King about the anonymous tip and explained that the police had him under surveillance. At that point, King put his head down, and admitted that he had methamphetamine at his house. These facts fail to show any reversible error in the trial court’s finding that King was free to go prior to this admission. Once King admitted he possessed methamphetamine, the police had probable cause to arrest him. Furthermore, nothing in the record indicates that King was coerced into signing the consent to search his home. Under these circumstances, we conclude that trial court did not err in denying the motion to suppress the evidence.
For the reasons stated above, we affirm the defendant’s conviction and sentence.
AFFIRMED.