357 So.2d 541 (1978)
STATE of Louisiana
v.
Roger Dale YATES.
No. 61035.
Supreme Court of Louisiana.
April 10, 1978.
*542 Robert J. Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Roger Dale Yates was indicted for the first degree murder of John B. Perry, in violation of R.S. 14:30. A unanimous jury of twelve found defendant guilty as charged. Subsequently defendant was sentenced to death by electrocution. On appeal defendant relies upon four assignments of error for reversal of his conviction and sentence, having abandoned four assignments.

Assignment of Error No. 2
Defendant was initially arrested for the unauthorized use of a credit card issued in the name of the victim, John B. Perry, Jr., while attempting to purchase a television set from a Sears, Roebuck in Jefferson Parish. The sales clerk became suspicious, called in the assistant credit manager who in turn summoned the Sears security guard, Leonard Brown. Objection here is made to Brown's testimony about an inculpatory statement defendant made while being questioned by the security guard.
Brown testified he removed defendant from the credit office to the security office where defendant consented to have his jacket searched. In the jacket pocket was a wallet containing numerous credit cards in the name of John B. Perry, Jr. Defendant objected to Brown's continued testimony regarding anything defendant said to him; he argued that no Miranda warnings were given by the security guard, and thus the statements would be inadmissible. The trial judge overruled defendant's objection, stating that the requirements of Miranda did not extend to detention of shoplifters under C.Cr.P. 215. Brown then proceeded to testify about the conversation that ensued:

*543 "I asked him his name. Let me retrack (sic). I asked him how he obtained the card. He said, his father gave it to him as a gift. And, I asked him his name, and he said, `My name is Robbie.' I said, `What is your given name at birth?' He said, `Sometimes they call me Robbie.' And, I said `What is your name?' He said, `It's right there on the card that you have in your hand.' I said, `What is written on the card?' He said, `My name.' I said, `What is it?' He said, `They just call me Robbie.' At that time, I knew it wasn't his card."
C.Cr.P. 215, a special article for dealing with shoplifters, allows a peace officer, merchant, or the merchant's specifically authorized employee to use reasonable force to detain a person for questioning on the merchant's premises for a period of up to sixty minutes when he has reasonable cause to believe the person has shoplifted merchandise. The trial judge determined that because article 215 specifies that "the detention [does not] constitute an arrest," Miranda was not applicable to the instant situation. The requirement that Miranda warnings be given, however, does not turn on whether or not an individual has been "arrested." Rather, Miranda applies when an individual is subjected to "custodial interrogation," defined by the United States Supreme Court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. State of Arizona, 284 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). (Emphasis added).
The trial judge's stated reasons in not requiring Miranda warnings under C.Cr.P. 215 were not correct. However, the result was correct, and the defendant's statements were admissible, because he was not "in custody" within the meaning of Miranda. Brown testified that although defendant was detained, "the door was open. He could leave of his own free will." This testimony was uncontradicted. Since he was free to depart, defendant was not subjected to the kind of coercive environment that would bring Miranda into operation. See Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). See State v. Himel, 257 So.2d 670 (La.1972).
There was no error by the trial court in admitting testimony about defendant's remarks to the security guard into evidence.

Assignments of Error Nos. 3 and 5
These assignments were taken to the admission into evidence of defendant's written confession. Defendant argues that the interrogating officer's failure to read the entire "rights of arrestee" form to him prior to his giving the statement violated his Miranda rights.
Officer George Florane testified he orally advised defendant of his right to counsel, but rather than continuing to read the rest of the rights enumerated on the rights of arrestee form, he handed defendant the form to allow him to read it himself. According to Officer Florane, defendant indicated he understood his rights and desired to give a statement. On the written statement itself appeared recitations that defendant had read the form as instructed, understood his rights, and desired to give a statement. The form was signed and the statement was given between 4:45 and 6:30 p. m. on March 18, 1975.
The record reveals that defendant was read his rights by a Jefferson Parish deputy sheriff at approximately 6:00 p. m. on March 17, 1975, when he was arrested for the theft at Sears. Also, at approximately 12:30 p. m. March 18, when defendant was arrested on the murder charge and taken from the custody of Jefferson Parish officials by Detective George Heath of the New Orleans police department, he was advised of his rights. Defendant then gave an oral confession to Detective Heath, the substance of which was virtually identical to the written statement.
Defendant took the stand and admitted signing the rights of arrestee form and the written statement, but denied being allowed to read them. He also testified to certain instances of abuse prior to giving *544 the statement.[1] Both Officers Florane and Heath stated that defendant was not threatened, coerced, beaten or induced in any way, or deprived of cigarettes. The trial judge, who viewed the witnesses and was in a position to evaluate their credibility, found the statement to be voluntary. His conclusions will not be disturbed on appeal unless unsupported by the evidence. See, e. g., State v. Scott, 355 So.2d 231 (1977); State v. Trudell, 350 So.2d 658 (La. 1977); State v. Cobbs, 350 So.2d 168 (La. 1977); State v. Scott, 344 So.2d 1002 (La. 1977); State v. Simmons, 340 So.2d 1357 (La.1976).
Although defendant was not read all the "Miranda" rights immediately before giving the written statement, we have previously held that:
". . . The Miranda Court fixed no ironclad procedure for advising an accused of his rights. There is no requirement that the rights be orally explained to a defendant; rather, the requirement is that the defendant understand his rights, and, if he chooses to waive them, that he do so intelligently and voluntarily." State v. McNeal, 337 So.2d 178, 180 (La.1976).
In McNeal, supra, we recognized that certain factors supported a conclusion that the defendant was effectively informed of his rights and intelligently waived them:
". . . (1) the defendant signed the rights form on the waiver and the confession; (2) he informed the officers that he read and understood his rights; (3) the officers testified that they saw him read the forms and that he indicated that he understood them; and (4) defendant can read and write and has a twelfth grade education." 337 So.2d at 181.
In the instant case the first three factors were present, accepting the trial judge's apparent evaluation of the police officers' version as true. However, defendant possessed only an eighth grade education. Even if reaching such an educational level should not carry a presumption that defendant could read and write, we are still satisfied that defendant was adequately informed of his constitutional rights. Defendant was read his rights upon his arrest at Sears on March 17 and again by Detective Heath prior to giving his oral statement on March 18, only four hours before defendant gave the written statement.
Hence, we conclude that the trial judge correctly ruled defendant's inculpatory statement to be free and voluntary and properly admitted it into evidence.[2]

Assignment of Error No. 6
As defendant correctly urges, the death sentence imposed upon him must be vacated. The mandatory death penalty required by R.S. 14:30, Acts 1973, No. 109, has been declared unconstitutional. Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Thus, the case must be remanded for resentencing to the most serious penalty at the time for the next lesser included offense, State v. Jenkins, 340 So.2d 157 (La.1976), that being second degree murder requiring life imprisonment without the benefit of parole, probation or suspension of sentence for a period of twenty years. R.S. 14:30.1, Acts 1973, No. 111, § 1.
For the reasons assigned, defendant's conviction is affirmed, but the death sentence imposed upon him is annulled and set aside, and the case is remanded to the district court for resentencing to imprisonment at hard labor for life without eligibility *545 for parole, probation or suspension of sentence for a period of twenty years.
SANDERS, C. J., concurs.
NOTES
[1] Defendant alleged that a detective named "George" beat him with a flashlight, a police officer opened a wooden door in his face injuring his eye, another officer wrapped a large snake around his head and neck and hit him in the ribs, and he was denied any cigarettes until he would sign the statement.
[2] Should we have ruled that the written statement was improperly admitted, we would conclude that this was not reversible error. Defendant's oral confession to Detective Heath, which was essentially the same as the written statement, was properly admitted. (Defendant makes no claim that this statement was involuntarily given). Thus, the jury had the damaging information before it even were the written statement excluded.