ROSEMARY LEDET, Judge.
_JjThe sole issue in this criminal appeal is whether the district court erred in denying the defendant’s motion to suppress the evidence. Finding no error, we affirm the defendant’s conviction and sentence.

STATEMENT OF THE CASE

On May 24, 2010, the State filed a bill of information charging the defendant, Gregory Ulmer, with possession of cocaine, a violation of La. R.S. 40:967(0(2). On May 27, 2010, he pleaded not guilty. On August 17, 2010, a motions hearing was held. The district court found probable cause and denied Mr. Ulmer’s motion to suppress the evidence. Finding “no error in the ruling of the trial court,” this court denied Mr. Ulmer’s writ application. State v. Ulmer, 10-1282 (La.App. 4 Cir. 12/1/10) (unpub.). On March 15, 2011, a jury found Mr. Ulmer guilty as charged.
On October 28, 2010, the district court sentenced Mr. .Ulmer to five years imprisonment at hard labor. Pursuant to a plea agreement, Mr. Ulmer pled guilty to being a triple offender. On January 4, 2012, the district court vacated the original sentence and sentenced Mr. Ulmer to ten years *1006 imprisonment at hard labor. This appeal followed.

^STATEMENT OF THE FACTS

On April 23, 2010, at about 9:00 a.m., Officer Jimmy Peak and his partner, Jonathan Sam, were on proactive patrol in the Iberville Housing Development. The officers were dressed in full uniform and riding in a marked unit. Officer Peak, who had been a NOPD officer for two years, testified at the motion hearing that they were patrolling the Iberville Housing Development because “we know it’s a high— right now, it’s a high crime area for violent crime, and drug trafficking.” When the officers were in the 1200 block of Conti Street, they observed an unknown man, later identified as Mr. Ulmer, standing at the gate that separates the 300 block of Basin and the 1200 block of Conti Street. Mr. Ulmer was talking to another unknown man, who was standing on the other side of the gate. According to Officer Peak, Mr. Ulmer and the other man “reached out towards each other, doing some kind of hand transaction,” which the officers believed was a drug transaction. At that point, the officers elected “to do a stop.”
The officers drove up behind Mr. Ulmer and stopped about three feet from him. Officer Sam testified that Mr. Ulmer walked away from the gate with his head down and that Mr. Ulmer neither looked up nor saw the officers approaching him. Officer Sam further testified that Mr. Ul-mer’s right hand was cupped and that he was “fidgeting in his hand with his left hand.” Officer Sam explained Mr. Ul-mer’s hand movements as follows: “[h]e’s like dusting his fingers off, trying to get like all the crumbs out of his hand.” Officer Sam still further testified that as they approached, Mr. Ulmer immediately looked up, stood up straight, and dropped something on the ground, which appeared to be several pieces of a rock-like substance. Officer Sam stated that he knew the rock-like substance was crack cocaine from his police work experience.
|sMr. Ulmer was advised of his rights and arrested for possession of crack cocaine. The other man on the other side of the gate fled and never was captured. The officers had seen Mr. Ulmer around the development previously. Although Officer Sam noted in the police report that Mr. Ulmer was sober at the time of the arrest, Officer Peak, at the motions hearing, described Mr. Ulmer as “always hyped up” during the previous encounters he had with him. The substance Mr. Ul-mer dropped subsequently tested positive for crack cocaine. The parties stipulated that if the criminalist, Glen Gilyot, were called to testify, he would testify that the rock-like substance tested positive for cocaine.
At trial, both Officers Peak and Sam positively identified Mr. Ulmer. Officer Peak, on cross-examination, acknowledged that he never saw any money transfer hands between Mr. Ulmer and the other man, that he never saw the men’s hands touch, and that Mr. Ulmer submitted to the officers’ show of authority. Officer Peak, however, testified that the men reached toward each other through the gate and that Mr. Ulmer’s hand was clenched as the officers approached him. According to Officer Peak, Mr. Ulmer could not walk towards the officers because he would have hit the front fender of the police unit.
Mr. Ulmer testified at trial in his defense. He indicated that he worked with a tour business in the French Quarter, that he was an entertainer in Jackson Square, and that he was a licensed barber. He also indicated that he was respected in the Iberville community. According to Mr. Ulmer, on the morning of April 23, 2010, *1007 he ate 'with Officers Peak and Sam at the store. Mr. Ulmer stated that the officers would help him whenever someone bothered his clients. After they ate, Mr. Ul-mer encountered a man named Admone on Conti Street, across from the graveyard. Admone asked Mr. Ulmer to cut his son’s hair, and Mr. Ulmer agreed. As Mr. [ 4Ulmer and Admone stood talking in a driveway, Officers Peak and Sam drove up. Mr. Ulmer testified that he had seen the officers only eight minutes earlier. Mr. Ulmer also testified that he performed a backward flip off the officers’ police unit.
According to Mr. Ulmer, Officers Peak and Sam told Admone to leave, placed Mr. Ulmer in their car, and kept him there for at least eight hours. Mr. Ulmer testified that the officers were soliciting his help as a confidential informant, but he was afraid to help them because it would endanger his life. Mr. Ulmer testified that the officers showed him his criminal record on a computer screen and that they asked him who he thought the judge (or the jury) was going to believe, him or them. Mr. Ulmer claimed the officers’ blackmailed him and that he never possessed any cocaine that day.

ERRORS PATENT

A review of the record for errors patent reveals none.

DISCUSSION

In his sole assignment of error, Mr. Ulmer asserts that the district court erred in denying his motion to suppress the evidence. It is well-settled that a “trial court is vested with great discretion when ruling on motion to suppress.” State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245; see also State v. Long 03-2592 (La.9/9/04), 884 So.2d 1176; State v. Fournette, 08-0254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199; State v. Jones, 02-1931 (La.App. 4 Cir. 11/6/02), 832 So.2d 382. Stated otherwise, a trial court’s ruling on a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion. State v. Wells, 08-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581.
[¡jin order to enforce the mandates of the federal and state constitutions[1] and to discourage police misconduct, evidence recovered pursuant to an unconstitutional search or seizure is inadmissible. State v. Hamilton, 09-2205, p. 3 (La.5/11/10), 36 So.3d 209, 211 (citation omitted). Searches and seizures conducted without warrants issued on probable cause are per se unreasonable unless justified by narrowly drawn exceptions to the warrant requirement. State v. Surtain, 09-1835, p. 7 (La.3/16/10), 31 So.3d 1037, 1043 (citing Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). At a suppression hearing, the State has the burden of proving the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D).
As noted, Mr. Ulmer’s sole assignment of error is that the district court erred in denying his motion to suppress the evidence. The gist of Mr. Ulmer’s argument on appeal is that an illegal stop occurred when the officers pulled their police unit up next to him, and he submitted to their authority. He maintains that the officers lacked reasonable suspicion to justify the stop and that the district court thus erred in refusing to suppress the evidence that *1008 was discarded when he was stopped. The State counters that no stop occurred. In the alternative, the State counters that assuming a stop occurred, the officers had reasonable suspicion to justify it.
Every encounter between an officer and a citizen is a not stop. Indeed, encounters between police and citizens have been divided into the following three “tiers”:
At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. [United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992)] ...; State v. Britton, 93-1990 (La.1/27/97); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Watson, 953 F.2d at 897 n. 1; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citing Terry, 392 U.S. at 27, 88 S.Ct. 1868); State v. Moreno, 619 So.2d 62, 65 (La.1993). See also La.Code Crim. Proc. art. 215.1(A), which provides that an officer’s reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is “insufficient to justify custodial interrogation even though the interrogation is investigative.” Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
At the third tier, a custodial “arrest,” the officer must have “probable cause” to believe that the person has committed a crime. Watson, 953 F.2d at 897 n. 1; Moreno, 619 So.2d at 65. See also La. Code Crim. Proc. art. 213, which uses the phrase “reasonable cause.” The “probable cause” or “reasonable cause” needed to make a full custodial arrest requires more than the “reasonable suspicion” needed for a brief investigatory stop. See Terry, 392 U.S. at 22, 88 S.Ct. 1868; State v. Flowers, 441 So.2d 707, 712 (La.1983) (noting that a less intrusive stop does not require the same “probable cause” needed for an arrest).
State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1182-83.
In this case, the district court implicitly categorized the encounter between Mr. Ulmer and Officers Peak and Sam as a second tier encounter — a Terry stop. In so doing, the district court discussed whether the officers’ observations of Mr. Ulmer’s hand reaching out and touching the other man’s hand provided reasonable suspicion to justify the stop. The district court acknowledged that the hand-to-hand motions between Mr. Ulmer and the other man could have been innocent — a 17handshake or giving dap (knocking fists together as a greeting).[2] *1009 Nonetheless, the district court denied Mr. Ulmer’s motion to suppress the evidence. Because we find, as did the district court, that the officers had reasonable suspicion to justify the stop, we find it unnecessary to address the issue of whether this was a first tier encounter.[3] The narrow issue presented is thus whether the officers had reasonable suspicion to justify stopping Mr. Ulmer. If the stop was justified, then the contraband that Mr. Ulmer discarded was legally seized.
Pursuant to La.C.Cr.P. art. 215.1, an officer may stop a person and question him if the officer has reasonable suspicion that the person has committed or is about to commit an offense. State v. Temple, 02-1895 (La.9/9/08), 854 So.2d 856; see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is less than the probable cause needed to arrest a defendant; an officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Temple, 02-1895 at p. 4, 854 So.2d at 859-60 (citations omitted). Addressing the standard of review applied to a determination whether an officer had reasonable suspicion to detain a suspect, the Louisiana Supreme Court in Temple stated:
In determining whether the police possessed the requisite “ ‘minimal level of objective justification’ ” for an investigatory stop based on reasonable suspicion of criminal activity, [United States v.] Sokolow, 490 U.S. [1] at 7, 109 S.Ct. [1581] at 1585, 104 L.Ed.2d 1 [ (1989) ] (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts “must look at the ‘totality of the circumstances’ of each case,” a process which “allows officers to draw |son their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); see also State v. Huntley, 97-0965, p. 1 (La.3/13/98), 708 So.2d 1048.
Temple, 02-1895 at p. 5, 854 So.2d at 860.
In this case, Officers Peak and Sam were patrolling a high crime area when they observed Mr. Ulmer engage in an apparent hand-to-hand transaction. The jurisprudence has held that an officer’s observation of such a hand-to-hand transaction is sufficient to provide reasonable suspicion to justify an investigatory Terry stop. State v. Fearheiley, 08-0307, pp. 1-2 (La.4/18/08), 979 So.2d 487, 488-89.
Explaining its finding that the observation of “an apparent hand-to-hand transaction” provided justification for an investigatory Terry stop, the Louisiana Supreme Court in the Fearheiley case stated:
In the present case, the police officer observed the “independent, yet complementary and simultaneous actions by two parties,” conducting an apparent hand-to-hand transaction, Black v. United States, 810 A.2d 410, 413 (D.C.2002), although the officer could not see what either person had in his or her hand. The apparent exchange lasted no more than 15 to 20 seconds inside one of two cars which had arrived separately in the *1010 parking lot of a Circle K store with no apparent purpose that evening other than facilitating the brief exchange before the parties, who appeared to the officer to have no other connection to each other, went their separate ways. That the encounter had other possible innocent explanations, including the one offered by defendant after the stop that the unidentified female involved in the transaction had paid off a debt she owed him, did not require the police officer to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations, encompassing 15 to 20 arrests, had taught him, that in the narcotics trade, “when it’s done outside, it’s done very fast from one hand to the next.” See Arvizu, 534 U.S. at 274, 122 S.Ct. at 751 (“Although an officer’s reliance on a mere ‘hunch’ is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a ^preponderance of the evidence standard.”) (citing Terry, 392 U.S. at 27, 88 S.Ct. at 1883 and Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585).

Id.

Similarly, this court in State v. Schaffer, 99-0766 (La.App. 4 Cir. 4/12/00), 767 So.2d 49, found that the observance by police officers of two individuals engaged in activity that was consistent with a drug transaction coupled with flight by the defendant provided the officers with reasonable grounds to stop the defendant. In the Schaffer case, the officers were on proactive patrol in a housing development when they observed the defendant and another individual engage in an apparent hand-to-hand exchange in the rain. When the two individuals saw the police car, they stood up abruptly and held onto the objects that they had in their hands. When the officers exited their vehicle, the defendant fled. This court reasoned that “[t]he combination of the defendant’s flight and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion.” Schaffer, 99-0766 at pp. 8-10, 767 So.2d at 53-55; see also State v. Lazard, 2008-0677, p. 5 (La.App. 4 Cir. 12/10/08), 2 So.3d 492, 496 (analogizing to the Shaffer case and finding police officers had reasonable suspicion to stop when the officers “observed a hand-to-hand exchange between Mr. Lazard and an unknown male that they suspected was a drug transaction based upon their experience and the reputation of the area”).
In this case, Officers Peak and Sam reasonably believed they observed Mr. Ul-mer engage in a hand-to-hand transaction. Based on the officers’ past experience and training, they believed they had observed a drug transaction. The area in which the apparent drug transaction occurred was a high drug-trafficking area. The officers had knowledge of Mr. Ulmer through prior encounters with him |inin the Iberville Housing Development. The other man involved in the apparent hand-to-hand transaction ran when the officers approached. Taken together, these circumstances support the district court’s finding that the officers had reasonable suspicion to justify stopping Mr. Ulmer. The officers then properly retrieved the contraband Mr. Ul-mer discarded when he was stopped. Given the circumstances of this case, the trial court did not err by denying Mr. Ulmer’s motion to suppress the evidence. This assignment of error lacks merit.

DECREE

For the forgoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED

. The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. Similarly, Article 1, Section 5 of the Louisiana Constitution protects “person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.”

. This court has previously noted that " ‘[d]ap’ is a term used to describe a street handshake.” State v. Randle, 98-1670, p. 4 (La.App. 4 Cir. 12/22/99), 750 So.2d 353, 356, n. 3. At the motion hearing, Mr. Ulmer’s counsel asserted that the officer merely saw a handshake initially. The district court noted that it agreed and that it had previously granted motions to suppress based upon the “giving dap argument,” but that this Court had reversed. Therefore, the district court denied the motion to suppress in this case.

. An officer needs neither probable cause to arrest nor reasonable suspicion to detain a person in order to approach a person and engage them in conversation. State v. Dobard, 01-2629, p. 3 (La.6/21/02), 824 So.2d 1127, 1130 (citation omitted). As long as the person approached by an officer is free to disregard the encounter and to walk away, search and provisions are not implicated. Id.