ROSEMARY LEDET, Judge.
_LjThis is a criminal appeal. The defendant, Johnny Williams, entered a Crosby conditional guilty plea,[1] reserving his right to appeal the district court’s ruling denying the motion to suppress his two statements. For the reasons that follow, we reverse the district court’s ruling denying the motion to suppress as to one of the statements, but affirm the district court’s ruling denying the motion to suppress as to the other statement. We remand to the district court for further proceedings consistent with the instructions provided in this opinion.

STATEMENT OF THE CASE

On January 5, 2012, the State of Louisiana charged Mr. Williams, by bill of information, with one count of simple robbery, in violation of La. R.S. 14:65, and one count of resisting an officer, in violation of La. R.S. 14:108. On September 26, 2012, Mr. Williams entered a plea of not guilty to both counts.
On November 27, 2011, Shantell Coleman, the victim, alerted New Orleans Police Department (“NOPD”) Officer Christopher Durning and other officers in the 300 block of Bourbon Street that a man allegedly stole her iPhone. Ms. Coleman then pointed out' Mr. Williams to the officers as the man who stole her |2iPhone. The officers approached Mr. Williams and informed him of Ms. Coleman’s accusations. Mr. Williams then attempted to run away. Officer Durning apprehended Mr. Williams, placed him under arrest, and administered Miranda warnings from memory.[2] Mr. Williams stated that he understood his rights. A search incident to an arrest was conducted, and Officer Durning found an iPhone in Mr. Williams’ front right pocket, which Ms. Coleman later identified as her iPhone. The officers escorted Mr. Williams to the Eighth District police station. During the short walk to the station, Officer Durning asked Mr. Williams general questions about the incident. Mr. Williams responded that he should not have been on Bourbon Street and that he was sorry (the “First Statement”).
Upon arrival at the police station, NOPD Detective Steve Nolan asked Mr. Williams whether he wanted to offer a statement. Mr. Williams stated that he did, and Detective Nolan took him to an interview room. Detective Nolan presented Mr. Williams with a voluntary statement form (the “Voluntary Statement Form”). He explained to Mr. Williams that by signing the Voluntary Statement Form, “it’s not admitting to any guilt; it’s just saying that I basically read my — we read you your rights, that you understand them, and if you wish to speak to me, you can.”[3] After Mr. Williams signed the Voluntary Statement Form, he stated that he took the iPhone to replace parts on his own phone (the “Second Statement”).
On April 18, 2013, Mr. Williams filed a motion to suppress both statements. At the motion hearing, the State called Officer Durning and Detective Nolan as witnesses. On July 9, 2013, the district court denied Mr. Williams’ motion to | ¡¡suppress the statements. Mr. Williams noted his objection on that date. Subsequently, he *58 entered a plea of guilty, reserving his right to appeal the district court’s judgment pursuant to Crosby. This appeal followed. ERRORS PATENT
A review of the record for errors patent reveals none.

DISCUSSION

In his sole assignment of error, Mr. Williams contends that the district court erred in denying the motion to suppress his two statements. In support, he contends that he was not fully advised of his Miranda rights before he made the two statements at issue and that the statements therefore should have been suppressed.
It is well-settled that a trial court is vested with vast discretion in ruling on a motion to suppress. State v. Ulmer, 12-0949, p. 4 (La.App. 4 Cir. 5/29/13), 116 So.3d 1004, 1007 (collecting cases). Stated another way, “a trial court’s ruling on a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion.” Id., 12-0949 at p. 4,116 So.3d at 1007 (citing State v. Wells, 08-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581).
At the outset, we note that both statements were made by Mr. Williams during a custodial interrogation — he was placed under arrest, asked questions by Officer Durning, escorted to the police station, and later interrogated by Detective Nolan. “In Miranda v. Arizona, the United States Supreme Court held that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins.” State v. Payne, 01-3196, p. 7 (La.12/4/02), 833 So.2d 927, 934 (citing Miranda, 384 U.S. at 469-473, 86 S.Ct. at 1625-1627). The pivotal issue in this case is whether Miranda warnings were |4properly given before both statements at issue. We separately address each statement because each was given to a separate NOPD officer, and each officer provided a separate Miranda warning to Mr. Williams.

The First Statement

As noted, the First Statement was made by Mr. Williams in response to Officer Durning’s general inquiries about the incident. The First Statement was that he should not have been on Bourbon Street and that he was sorry. Mr. Williams contends that before he made the First Statement, Officer Durning administered Miranda warnings by memory and that the officer failed to inform him of his right to have counsel present during questioning. As a result, Mr. Williams contends that he was not given a complete recitation of his Miranda rights and that the First Statement should have been suppressed.
The State counters that the jurisprudence does not require a verbatim recitation of the Miranda warnings and that to require law enforcement officers to specifically advise a defendant that he has a right to an attorney present during questioning “cruelly tortures the English language.” The State emphasizes that Officer Durning advised Mr. Williams that he had the right to an attorney and that if he could not afford one, an attorney would be appointed to represent him. The State contends that this warning was legally sufficient.
In Miranda, the United States Supreme Court outlined the procedural safeguards that must be satisfied before a custodial interrogation takes place as follows:
Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either re- *59 tamed or appointed. The defendant may waive 15effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.
Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. The Louisiana Supreme Court has further noted that “it is well-settled that a ‘heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.’ ” State v. Vigne, 01-2940, p. 6 (La.6/21/02), 820 So.2d 533, 537 (quoting Tagne v. Louisiana, 444 U.S. 469, 470, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980)).
The sufficiency of the part of the Miranda warning regarding the right to have counsel present during interrogation was addressed by this court in State v. Harris, 11-0941 (La.App. 4 Cir. 8/2/12), 98 So.3d 903. In that case, the defendant was arrested after a detective observed cocaine in his mouth. Harris, 11-0941 at p. 7, 98 So.3d at 911. The detective advised defendant of some of his rights, which the detective recited by memory; and the defendant subsequently made self-incriminating statements. Harris, 11-0941 at p. 12, 98 So.3d at 913. Although the district court denied the defendant’s motion to suppress his statements, this court reversed. In so doing, this court reasoned that the detective’s warning to the defendant that “he had a right to an attorney” was insufficient under Miranda. This court explained that the warning failed to clearly inform the defendant that his right to counsel included the right to speak to an attorney before police interrogation and to have an attorney present during such interrogation. Continuing, this court noted:
A verbatim recitation of the warnings as set out in Miranda is not required, and the Supreme Court has “never insisted that Miranda warnings be given in the exact form described in that decision.” Duckworth v. Eagan, 492 U.S. 195, 202,109 S.Ct. 2875,106 L.Ed.2d 166 (1989). “The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by Miranda.” Id. at 203, 109 S.Ct. 2875. While no exact language is required, informing an individual of his right to consult with a lawyer before interrogation | fiand to have a lawyer present with him during interrogation “is an absolute prerequisite to interrogation.” Miranda, 384 U.S. at 471, 86 S.Ct. 1602.
This temporal requirement that the right to the lawyer attaches before and during any interrogation is key.
Harris, 11-0941 at p. 14, 98 So.3d at 914.
By analogy, in this case Officer Durning advised Mr. Williams that he had a right to an attorney; he failed to advise him that the right to an attorney included the right to speak to an attorney before police interrogation and to have an attorney present during such interrogation. At the motion hearing, Officer Durning testified that the rights he recited from his memory to Mr. Williams were as follows: “You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney; if you can’t afford one, one will be appointed to you.”[4] As in Harris, we find Officer Dunning’s warning to Mr. Williams that he had a right to attorney was insufficient under Miranda. The district court thus erred in denying *60 Mr. Williams’ motion to suppress the First Statement.[5]

The Second Statement

The Second Statement was made by Mr. Williams after he signed the Voluntary Statement Form. In the Second Statement, Mr. Williams stated that he took the iPhone to replace parts on his own phone. Mr. Williams contends that the Second Statement should have been suppressed because he made it after Detective |7Nolan coerced him to sign the Voluntary Statement Form. Mr. Williams further contends that Detective Nolan deceptively informed him that by signing the Voluntary Statement Form, “it’s not admitting to any guilt; it’s just saying that I basically read my — we read you your rights, that you understand them, and if you wish to speak to me, you can.” Mr. Williams submits that he did not knowingly and intelligently waive his rights by signing the Voluntary Statement Form.
The United States Supreme Court in Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986), addressed the issue of coercive police activity and the voluntariness of a waiver. The Supreme Court noted that “coercive police activity is a necessary predicate to the finding that a confession is not ‘voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.” Id. The Supreme Court further noted:
The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on “free choice” in any broader sense of the word. See Moran v. Burbine, 475 U.S. [412], at 421,106 S.Ct. [1135], at 1141, 89 L.Ed.2d 410 [ (1986) ] (“[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception .... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements”); Fare v. Michael C, 442 U.S. 707, 726-727, 99 S.Ct. 2560, 2572-2573, 61 L.Ed.2d 197 (1979) (The defendant was “not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit.... The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in Miranda ”).
Connelly, 479 U.S. at 170, 107 S.Ct. at 523.
Detective Nolan testified that he did not force, coerce, or threaten Mr. Williams to sign the Voluntary Statement Form. He further testified that when Mr. Williams arrived at the station, Mr. Williams told Detective Nolan that he wanted to give a statement. Once in the interview room, Mr. Williams signed the | a Voluntary Statement Form and told Detective Nolan that he took the iPhone to replace parts on his own phone. Mr. Williams failed to offer any evidence at the motion hearing to rebut Detective Nolan’s testimony or to prove any signs of coercion or force. Given these circumstances, we conclude that Mr. Williams voluntarily signed the Voluntary Statement Form.
Mr. Williams also contends that he did not knowingly sign the Voluntary Statement Form because Detective Nolan failed to give him “correct or complete *61 [Miranda] rights.” The State counters that because there was no significant break in the interrogation process, Detective Nolan was not required to “re-Miran-dize ” Mr. Williams before questioning him at the station. In support, the State cites State v. Harvill, 403 So.2d 706, 709 (La. 1981) (holding that “[a]bsent some significant break in the interrogation process, such as a specific request for assistance of counsel, repetition of these warnings prior to the taping of defendant’s statement is not required.”). The State also emphasizes that the Voluntary Statement Form contained a full recitation of the required Miranda warnings and that Mr. Williams’ signature on the Voluntary Statement Form serves as “strong evidence” that he voluntarily and knowingly waived his right to remain silent.
The State’s contention that there was no requirement that Mr. Williams be “re-Mir-andized ” because he was Mirandized by Officer Durning is belied by our finding that Officer Durning failed to provide satisfactory Miranda warnings. Hence, in order for Mr. Williams’ Second Statement to be admissible, Detective Nolan was required to provide Mr. Williams with satisfactory Miranda rights. For the reasons set forth below, we find that he did so.
Although Detective Nolan failed to state whether he read Mr. Williams his rights or whether Mr. Williams read these rights himself, the jurisprudence has |3recognized that it is not necessary for an officer to read a defendant his rights if the record otherwise indicates that the defendant was informed of his rights. See State v. Wright, 441 So.2d 1301, 1304 (La.App. 1st Cir.1983) (the defendant testified that he read the voluntary statement form, and the deputy testified that the defendant read the form and indicated that he understood his rights); see also State v. Yates, 357 So.2d 541, 544 (La.1978). Such is the case here.
The Voluntary Statement Form that Detective Nolan provided to Mr. Williams contained a full recitation of the Miranda warnings. Mr. Williams signed the Voluntary Statement Form, a certified copy of which is in the record.[6] Further, Detective Nolan testified that he told Mr. Williams that by signing the Voluntary Statement Form he was not admitting guilt, but simply saying that he understood his rights. Thus, the enumeration of the Miranda rights in the Voluntary Statement Form coupled with Detective Nolan’s testimony establish that when Mr. Williams signed the Voluntary Statement Form he indicated that he understood his rights and that he was knowingly waiving these rights. Accordingly, the district court did not abuse its discretion in denying the motion to suppress as to the Second Statement.

Harmless Error

Mr. Williams contends that if this court finds the district court erred in failing to suppress either or both of his statements, it was not “harmless error.” Conversely, the State contends that any such error was harmless. We find it unnecessary to resolve this issue. Harmless error is determined at trial, not in a pretrial setting. Thus, the harmless error standard does not apply when, as in this | ] pease, a defendant has entered a conditional Crosby plea. Harris, 11-0941 at pp. 20-21, 98 So.3d at 917-18.
In Harris, this court explained why the harmless error standard does not apply in this context as follows:
*62 Unlike the defendant in [Arizona vj Fulminante, [499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ], Mr. Harris entered a conditional guilty plea, reserving his right to appeal the trial court’s pre-trial rulings. Mr. Fulmi-nante’s complaint arose out of the in-trial introduction of an involuntary statement. Fulminante, 499 U.S. at 283-284, 111 S.Ct. 1246. And Mr. Harris entered a qualified plea of guilty under State v. Crosby, 338 So.2d 584 (La.1976).
The purpose of allowing a qualified plea under Crosby “is to permit a fair and efficient method to review a central issue of a trial and a prosecution, in instances where the pre-plea ruling, if erroneous, mandates a reversal of any conviction which may result.” Id. at 591. A conditioned plea avoids the delay and expense of an unnecessary trial when the trial would serve as only a formality before the defendant could appeal his adverse pre-trial ruling: Id.
[[Image here]]
Because the trial judge found this pretrial ruling to be a sufficient basis to accept a conditional plea, see State v. Gillis, 07-1909 (La.App. 1 Cir. 3/26/08), 985 So.2d 745, Mr. Harris benefits from the presumption that his assignments of error would be grounds for the reversal of his conviction, should we find them to be correct. Thus, we reject the prosecution’s suggestion that we review the ruling for harmless error.
Harris, 11-0941 at pp. 20-21, 98 So.3d at 917-18. Likewise, given that Mr. Williams entered a Crosby plea and did not go to trial, the harmless error analysis is inapplicable in this case.

Summary

Summarizing, we find that Mr. Williams did not knowingly make the First Statement to Officer Durning. Officer Durning failed to fully advise him of his right to have counsel present during interrogation as required by Miranda. Conversely, we find that Mr. Williams did voluntarily and knowingly make the |n Second Statement to Detective Nolan. The Voluntary Statement Form included a full recitation of the Miranda warnings and Detective Nolan testified that Mr. Williams indicated that he understood those rights by signing the Voluntary Statement Form.
Although the reversal of the district court’s ruling and the setting aside the guilty plea is the relief that Mr. Williams seeks, it is not evident that the suppression of the First Statement without the suppression of the Second Statement would necessarily impel Mr. Williams to withdraw his guilty plea. For this reason, we reverse the district court’s ruling on the motion to suppress the First Statement, but remand to the district court for further proceedings. On remand, the district court is instructed to allow Mr. Williams to file a motion to withdraw his guilty plea within thirty days of the finality of this Court’s judgment. If Mr. Williams timely files such motion, the district court is further instructed to allow Mr. Williams a new trial. See Harris, 11-0941 at p. 21-22, 98 So.3d at 918.

DECREE

For the foregoing reasons, the district court’s ruling denying the motion to suppress the Second Statement is affirmed, its ruling denying the motion to suppress the First Statement is reversed, and this case is remanded for further proceedings consistent with the instructions provided in this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

. State v. Crosby, 338 So.2d 584, 588 (La. 1976).

. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

.Detective Nolan testified that everything that took place in the interview room was recorded; however, the State did not introduce the recording into the record.

. Thereafter, Mr. Williams was arrested, escorted to the police station, and asked by Officer Durning why he stole the iPhone. Mr. Williams then made the First Statement — that he should not have been on Bourbon Street and that he was sorry.

. Mr. Williams also argues that the Miranda warnings Officer Durning recited to him were incomplete because he was not advised that his silence could not be used against him. Given our holding that the First Statement should be suppressed on another basis, we pretermit addressing this alternative argument.

. Although a certified copy of the Voluntary request to supplement the record on appeal Statement Form was not in the record on with a certified copy of the Voluntary State-appeal, the district court granted the State's ment Form.