| STATE OF LOUISIANA | * | NO. 2024-K-0497 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ZACHARY HUNT | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 557-644, SECTION "D"
Judge Kimya M. Holmes,
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

Jason Rogers Williams
District Attorney
Brad Scott
Chief of Appeals
A.Spencer Gulden
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR PLAINTIFF/RESPONDENT

Arianne Bennett
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70119

     COUNSEL FOR DEFENDANT/RELATOR


**WRIT GRANTED.**
**RELIEF DENIED.**
**OCTOBER 31, 2024**

SCJ
TFL
RDJ

The defendant, Zachary Hunt, seeks review of the trial court's ruling of July 10, 2024, denying his motion to suppress evidence and finding probable cause to arrest. For the following reasons, we hold that the trial court did not err in denying the defendant's motion to suppress and finding probable cause. We grant the defendant's application for supervisory writs; however, we deny relief.

## PROCEDURAL HISTORY

On April 5, 2023, the defendant, Zachary Hunt, was charged by bill of information with one count each of illegally possessing a firearm while in possession of a controlled dangerous substance; illegally carrying a concealed firearm; resisting an officer; possession of a stolen firearm; and possession of a schedule II controlled dangerous substance (in an amount less than two grams). The defendant appeared for arraignment on June 6, 2024, and entered pleas of not guilty to all counts.

On July 10, 2024, the trial court held a preliminary hearing and also heard defendant's motion to suppress evidence. At the hearing, NOPD Officer Kristopher

1

Devore testified that on January 9, 2023, he was patrolling the Sixth District in tandem with the Special Operations Division due to the rise in violent crimes occurring in the area. Office Devore stated that the police unit he was operating with his partner, Officer Perez, was the third in a caravan of police vehicles led by his supervisor, Sergeant Johnson. The caravan set out for patrol after dark, around 6:30-7:00 pm, and had only travelled a few blocks when Sergeant Johnson stopped the lead vehicle for reasons Officer Devore did not know at the time, because Sergeant Johnson's unit was the first one to turn onto Chippewa Street. Officer Devore testified that as Sergeant Johnson exited his vehicle, two men ran. He stated that Sergeant Johnson chased the defendant, and he assisted Officer Rodriguez with the apprehension of the other man.

Officer Devore testified that based on what he learned from Sergeant Johnson and other officers on the team, apparently Sergeant Johnson had observed defendant and the other man (defendant's co-defendant, Lee) walking together on the sidewalk when he turned his police vehicle onto Chippewa Street. Johnson told him that the defendant had a phone in his hand but his other hand was clutching an unknown object in his jacket, which Sergeant Johnson suspected was a firearm. Once the two men noticed the police caravan, they separated, and Lee crossed the street. Sergeant Johnson then stopped his vehicle and exited the vehicle when the defendant fled. While fleeing, the defendant threw the firearm over a fence. The firearm was retrieved and the defendant was apprehended. Officer Devore testified that Officer Rodriguez also observed Lee throw a firearm into a bush as he fled.

Officer Devore testified that a search incident to the defendant's arrest yielded one Tapentadol pill, and stated that a search of Lee yielded a higher quantity of Tapentadol, as well as marijuana. He also testified that the firearms that

2

they recovered—that defendant and Mr. Lee had each discarded as they fled— had both been reported stolen. On cross-examination, Officer Devore acknowledged that he had not personally observed defendant or Lee engage in any hand-to-hand transactions or other overt criminal offenses. Officer Devore confirmed on redirect examination that his knowledge of the situation prior to his personal observation of Sergeant Johnson starting to exit his vehicle and the two suspects fleeing, was comprised solely of information he learned from other officers at the scene and from the police report drafted in this case.

Following oral argument, the court issued its ruling from the bench, denying defendant's motion to suppress evidence and finding probable cause.[1]

## STANDARD OF REVIEW

When a trial court finds facts based on the weight and credibility of witnesses' testimony, a reviewing court may not overturn those findings unless there is no evidence to support them. *State v. Wells*, 2008-2262, pp. 4-5 (La. 7/6/10), 45 So.3d 577, 580-81. On the other hand, a trial court's holdings on questions of law are reviewed *de novo. Id.*, 2008-2262, p. 4, 45 So. 3d at 580. At a hearing on a motion to suppress, the burden is on the State to prove the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); *State v. Ulmer*, 2012-0949, p. 5 (La. App. 4 Cir. 5/29/13), 116 So. 3d 1004, 1007.

## DISCUSSION

The defendant raises three arguments as to why the trial court erred in denying the motion to suppress and finding no probable cause. First, he argues

---

[1] The defendant objected and orally noticed his intent to seek a writ. The court set a return date of August 12, 2024, on which date defendant timely filed his writ application in this Court. Trial was originally set for October 8, 2024, but moved to December 3, pending resolution of this matter.

that Sergeant Johnson lacked reasonable suspicion to justify an investigative stop of the defendant, thus his subsequent arrest was unconstitutional and any evidence seized incident thereto should be inadmissible. He asserts that the firearm he abandoned in response to the unjustified stop should also have been suppressed.[2] Next, the defendant asserts that Office Devore's testimony was insufficient for the trial court to make factual findings on which to base its ruling. Defendant's final argument is the inadmissibility of hearsay testimony of Officer Devore. Specifically, he argues that because Officer Devore personally did not witness the defendant's actions that Sergeant Johnson claimed gave rise to the reasonable suspicion justifying the investigatory stop.

We begin by addressing the testimony of Officer Devore. The court did not err in considering office Devore's testimony. Hearsay testimony is admissible in a suppression hearing." *State v. Bentley*, 2012-1106, p. 8 (La. App. 4 Cir. 5/15/13), 116 So.3d 891, 896. In *State v. Caliste*, 2012-1548, n.7 (La. App. 4 Cir. 6/14/13), 131 So.3d 902, 907, this Court recognized that the "collective knowledge doctrine, or "fellow officer rule[,"] provides that in certain circumstances, several officers' observations can be aggregated to establish the probable cause needed for a warrantless search or seizure, or to obtain a search or arrest warrant under the Fourth Amendment."

The U.S. and Louisiana Constitutions recognize the rights of persons to be secure in their person, property, and effects, and to be free from unreasonable

_____

[2] Mr. Hunt arguably failed to preserve his right to review the district court's ruling denying suppression of the firearm he discarded, as he specifically stated to the district court during the hearing that he was limiting his notice of intent to seek review of the portion of the district court's ruling denying the suppression only of the controlled substance. However, Mr. Hunt fails to recognize this apparent limitation in his writ application to this Court and instead requests the reversal of the ruling denying suppression of "the evidence seized." Further, Mr. Hunt's unsigned Notice of Intention to Apply for Supervisory Writs sought review of the findings of probable cause and the denial of the Motion to Suppress.

4

searches and seizures. U.S. Const. amend. IV; La. Const. art. 1 §5.[3] Reasonableness dictates the balance between legitimate law enforcement concerns and an individual's protected privacy interests. *State v. McClendon*, 2013-1454 p, 4 (La. App. 4 Cir. 1/30/14), 133 So. 3d 239, 244. "A search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement." *State v. Surtain*, 2009-1835, p. 7 (La. 3/16/10), 31 So. 3d 1037, 1043. A reviewing court "must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights." *State v. Guillot*, 2012-0726, p. 4 (La. App. 4 Cir. 4/17/13), 115 So. 3d 624, 628.

Police officers have the right to approach anyone in public and engage in conversation or ask questions without the need for probable cause or reasonable suspicion as long as the person approached feels free to disregard the encounter and walk away, and such an encounter does not violate the Fourth Amendment. *State v. Hamilton*, 2009-2205, p. 4 (La. 5/11/10), 36 So. 3d 209, 212. La. C.Cr.P. art. 215.1 provides, in pertinent part:

> A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

*See also Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968) ("a law enforcement officer, who reasonably concludes in light of his experience

---

[3] La. Const. art. 1 §5 also protects an individual's right to be free from unreasonable invasions of privacy.

that criminal activity may be occurring, or may have occurred, may briefly stop a suspicious person and make reasonable inquiries for the purpose of confirming or dispelling his suspicions.").

The reasonable suspicion standard required for an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *see also Terry*, *supra*, 392 U.S. at 16, 88 S.Ct. at 1877 (the reasonable suspicion standard required for an investigatory stop is less demanding than probable cause required to justify an arrest).

> In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific articulable facts, which, if taken together with rational inferences from those facts, warrant the stop. The officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable, and deference should be given to the experience of the officers present at the time of the incident.

*State v. Marzett*, 2009-1080, pp. 5-6 (La. App. 4 Cir. 6/9/10), 40 So. 3d 1204, 1208, citing *State v. Williams*, 2007-0700, pp. 11-12 (La. App. 4 Cir. 2/13/08), 977 So. 2d 1101, 1111 (internal citations omitted). "Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges and local law enforcement officers." *State v. Morgan*, 2009-2352, p. 5 (La. 3/15/11), 59 So. 3d 403, 406.

The United States Supreme Court has identified a number of factors courts can consider to determine whether police had a "particularized and objective basis" for harboring such suspicion, such as presence in a high-crime area, the suspect's

6

unprovoked flight from police officers, the "lateness of the hour," and whether the area is dimly lit. *Morgan*, 2009-2352, p. 5, 59 So. 3d at 406-07. Other factors that may be considered include a suspect's nervous, furtive, or evasive conduct at the presence of police officers. *State v. Adams*, 2001-3231, p. 2 (La. 1/14/03), 836 So. 2d 9; *State v. Morton*, 2008-164, p. 7 (La. App. 5 Cir. 7/29/08), 993 So. 2d 651, 656. While any factor standing alone may be insufficient to constitute reasonable suspicion, the Supreme Court has held that unprovoked flight by an individual in a high-crime area is sufficient to give police officers reasonable suspicion of criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000).[4]

In *State v. Alvarez*, 2009-0328, p. 1 (La. 3/16/10), 31 So. 3d 1022, 1023, police were conducting a traffic stop in a "high crime area," and noticed the defendant observing them from in between two apartment buildings and behaving in a "nervous and erratic manner." The officers started to approach the defendant, but he fled through the alleyway between the buildings. *Id.*, 2009-0328, pp. 1-2, 31 So. 3d at 1023. The officers gave chase and observed the defendant remove a firearm from his waistband, discard it in the bushes, and then run into a nearby apartment. *Id.* The officers forcibly entered the apartment and arrested defendant;

---

[4] The United States Supreme Court in *Wardlow* noted that flight from police officers is a primary consideration in the totality of the circumstances analysis, stating:

> Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. . . . Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

528 U.S. at 124-125, 120 S.Ct. at 676. Notably, the police in *Wardlow* converged on the defendant in a "four-car caravan." 528 U.S. at 121, 120 S.Ct. at 674.

a search incident to arrest yielded crack-cocaine located in the defendant's pocket. *Id., 20*09-0328, p. 2, 31 So. 3d at 1023.

The district court found the stop was justified and denied suppression of the evidence. *Id.*, 2009-0328, p. 4, 31 So. 3d at 1024. Notwithstanding the appellate court's recognition that police officers may approach anyone in public and ask them questions without the need for reasonable suspicion (as long as the individual remains free to disregard the encounter), the Fifth Circuit nevertheless vacated the defendant's conviction and sentence finding that, "while the police had not actually seized defendant at the time he discarded the gun concealed in his waistband, the officers had chased him 'with such force that, regardless of [his] attempts to flee or elude the encounter, an actual stop [was imminent].'" *Alvarez*, 2009-0328, p. 2, 31 So.3d at 1023 (quoting *State v. Alvarez*, 2008-0558, p. 8 (La. App. 5 Cir. 1/13/09), 8 So. 3d 50, 55). The appellate court reasoned that the defendant had merely exercised his right to disregard the police encounter and had walked away; without reasonable suspicion of criminal activity, the police were neither justified in conducting an investigatory stop nor an "imminent stop," thus the seizure of the discarded firearm was tainted by the illegal imminent stop of the defendant, rendering it inadmissible. *Id.*, 2009-0328, pp. 2-3, 31 So. 3d at 1023.

Relying on *Wardlow*, the Louisiana Supreme Court reversed the appellate court, holding that "headlong, unprovoked flight" is distinguishable from a simple refusal to cooperate. *Alvaraz*, 2009-0328, p. 3, 31 So. 3d at 1024. The Court further held that the totality of the circumstances, which included "the lateness of the hour, the "high crime" nature of the area, the furtive behavior of the defendant [in which he] was attempting to evade the officers' sight and watch their actions," as well as his unprovoked flight, provided reasonable suspicion to initiate an

investigatory stop, "whether that stop was actual or 'imminent.'" *Id*. Thus, the recovery of the abandoned firearm was also lawful, which provided the officers with probable cause to arrest the defendant for illegally carrying a concealed firearm, and the narcotics discovered in the defendant's pocket during the search incident to his arrest were admissible. *Id.*, 2009-0328, p. 4, 31 So. 3d at 1024.

We find that *Alvarez* is controlling precedent. In this case, although the defendant contends that Officer Devore never testified that he was patrolling a "high crime area," he did testify that the area had become notorious for a rash of violent crimes, which necessitated a special task force and a caravan of patrolling police units. Accordingly, while Officer Devore did not use the exact phrase "high crime area," his testimony communicated that the area being patrolling was plagued by violent crimes so high in number, that the regular police force assigned to patrol the area was evidently insufficient, thus constituting a "high crime area."

Therefore, when the defendant fled from the scene in response to nothing more than Sergeant Johnson starting to exit his vehicle, police officers possessed reasonable suspicion to conduct an investigatory stop. The district court was also permitted to consider the circumstances in totality, which included the darkness, as the sun had already set; the two men splitting up at the sight of the police presence, arguably to avoid continued observation or apprehension; and Sergeant Johnson's inability to view the object the defendant was concealing in his jacket. Based on the totality of the circumstances discussed above, we find the police officers possessed sufficient reasonable suspicion to justify conducting an investigatory stop on the defendant.

Moreover, once police officers observed the defendant throw a firearm over a fence during his flight, any suspicion that the defendant was concealing a firearm

in his jacket became probable cause for his arrest therefor. Accordingly, the search of the defendant incident to his arrest for carrying a concealed firearm was valid, and the district court did not err in denying his motion to suppress the evidence recovered in this case.

Accordingly, the defendant's writ application is granted, but relief is denied.

WRIT GRANTED.
RELIEF DENIED.